**STATE of Iowa, Appellant,**

v.

**Brian E. STONEKING, Appellee.**

**No. 84–1623.**

Supreme Court of Iowa.

Dec. 18, 1985.

Thomas J. Miller, Atty. Gen., Pamela S. Greenman, Asst. Atty. Gen., and Denver D. Dillard, Co. Atty., for appellant.

Guy P. Booth, Cedar Rapids, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

This is a discretionary review of a district court ruling in a criminal case that suppressed evidence of an Iowa Code section 321B.4 [1] blood test because it was administered slightly more than two hours and five minutes after a preliminary breath test was administered to defendant Brian E. Stoneking. We determine, in the circumstances presented, this delay in administering the test was not fatal and evidence of the result should not have been excluded on that ground. Accordingly, we reverse and remand for further proceedings.

A two-count indictment charged defendant with both involuntary manslaughter and operating a motor vehicle while under the influence of an alcoholic beverage. Defendant's pretrial suppression motion sought to exclude the result of his blood test.

The hearing on the motion developed little dispute about the facts. On June 16, 1984, at about 2:23 a.m., defendant was involved in a vehicular collision that resulted in a fatality. Officer Rader, arriving at the scene, first observed defendant seated in another officer's car. Rader smelled alcohol on defendant's breath, noted the latter's thick-tongued speech and bloodshot eyes, and administered a preliminary breath test at about 2:50 a.m. The breath test result was positive. Rader placed defendant under arrest at once.

Apparently there was some concern that defendant had been injured. He was examined on the scene by ambulance personnel, who applied a neck brace. Defendant arrived at the hospital between 3:15 and 3:25 a.m., and signed in at 3:44 a.m. An attending physician ordered x-rays.

At 3:55 a.m., just before defendant was removed for x-rays, Rader invoked the implied consent provision of Iowa Code chapter 321B by making a written request that defendant submit to a blood-alcohol chemical test. An additional form was filled out and signed by the physician, authorizing the test on his patient, the defendant. Defendant, however, did not sign the consent form at that time because he wanted to consult with his attorney before making a decision.

The hospital staff then took defendant to be x-rayed. A laboratory technician arrived at 4 a.m. to withdraw the blood specimen, but defendant was not available. The x-rays were completed and following consultation with the attending physician, defendant telephoned his lawyer. This conference took from 4:35 to approximately 4:45 a.m. Defendant then signed the consent form. The technician was recalled, observed that all the consent forms were completed properly, and withdrew the blood sample at 4:55 a.m.

Trial court found the above facts and that the blood specimen was withdrawn "slightly more than two hours and five minutes after the defendant originally took the preliminary screening test at the scene." The court found that although Iowa Code subsection 321B.4(2) only stated the peace officer should "provide" a test within two hours, this language meant the test must be *administered* within that period, relying on *State v. Vietor*, 261 N.W.2d 828, 831 (Iowa 1978). We granted the State's application for discretionary review.

I. A preliminary skirmish between these parties involves our scope of review. Defendant contends the issue centers on the State's failure to produce the requisite foundation for the admission of evidence. From this premise he argues our review is an abuse of discretion. *See State v. Her-*

---

1. All references in this opinion are to the 1983 Iowa Code, which was the controlling statutory law at the time these events occurred.

*shey,* 348 N.W.2d 1, 2 (Iowa 1984) ("Foundational questions are to be determined by the court. Our review is for abuse of discretion.") (citations omitted). The State, on the other hand, asserts our review is on errors of law because the issue is one of statutory interpretation. *See State v. Davis,* 271 N.W.2d 693, 695 (Iowa 1978) ("Where the issue on appeal is not one of fact but rather one of statutory interpretation and application, the supreme court is not bound by trial court's determinations of law.").

This case more closely resembles *Davis* in that "the operative facts and inferences are not controverted," *id.,* and the result will turn on the construction of Iowa Code subsection 321B.4(2). We thus reject defendant's contention which, in the final analysis, would compel us to accept the district court's statutory interpretation, absent an abuse of discretion.

II. We reviewed the public policy undergirding Iowa Code chapter 321B in *State v. Hitchens,* 294 N.W.2d 686, 687 (Iowa 1980). *See* Iowa Code § 321B.1. We here focus on Iowa Code section 321B.4:

1. Any person who operates a motor vehicle in this state upon a public highway under circumstances which give reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321.281, is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, saliva, or urine, and to a chemical test or tests of the specimens for the purpose of determining the alcoholic content of the blood, subject to this section. The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321.281, and if any of the following conditions exist:

a. A peace officer has lawfully placed the person under arrest for violation of section 321.281.

b. The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.

c. The person has refused to take a preliminary breath screening test provided by this chapter.

d. The preliminary breath screening test was administered and it recorded ten hundredths or more of one percent by weight of alcohol in the blood.

2. The peace officer shall determine which of the four substances, breath, blood, saliva, or urine, shall be tested. Refusal to submit to a chemical test of urine, saliva or breath is deemed a refusal to submit, and section 321B.13 applies. A refusal to submit to a chemical test of blood is not deemed a refusal to submit, but in that case, the peace officer shall then determine which one of the other three substances shall be tested and shall offer the test. If the peace officer fails to provide a test within two hours after the preliminary screening test is administered or refused or the arrest is made, whichever occurs first, a test is not required, and there shall be no revocation under section 321B.13.

Iowa Code § 321B.4.

In this case it is undisputed that defendant's blood test was administered slightly more than two hours after the preliminary breath test. Thus we are required to determine the meaning of the last sentence in subsection 321B.4(2) that states: "If the peace officer fails to *provide* a test within *two hours* after the preliminary screening test is administered … a test is not required...." (Emphasis added.)

Iowa Code subsection 321.281(8) states chemical test results are admissible in an OWI prosecution "upon proof of a proper *foundation.*" Iowa Code § 321.281(8) (emphasis added). The burden is on the State to supply the foundation. *State v. Schlemme,* 301 N.W.2d 721, 722 (Iowa 1981); *see Heidemann v. Sweitzer,* 375 N.W.2d 665, 668–69 (Iowa 1985). The trial court in this case, interpreting Iowa Code subsection 321B.4(2) as requiring administration of the test within two hours, found

the State had failed to meet its foundational burden.

■ The State asserts several alternative arguments as a basis for concluding trial court erred: (1) the time period is not a foundational requirement for permitting the result of an Iowa Code section 321B.4 blood test to be introduced into evidence; (2) if the time period is a foundational requirement, the statute requires only that the test be made available within two hours, not that it be *administered* within that time; and (3) if the test must be administered within the two hours, substantial compliance is sufficient to meet the requirements of the statute. In our view, the issue in this case may be resolved by addressing only the second of the State's alternative arguments.

It first should be noted that *Vietor*, 261 N.W.2d 828, is not dispositive of this case. The issue in *Vietor* was raised by an implied consent form that instructed the arrested person he was not "entitled to consult an attorney prior to consenting or refusing to the withdrawal of a body specimen." *Id.* at 830. We held there was a limited statutory right to consult counsel. We wrote that the Iowa Code section 755.17 right to counsel, however, "must be balanced against the practical consideration that a chemical test is to be administered within two hours of the time of arrest or not at all." *Id.* at 831.

It is obvious the statement just quoted was not controlling in the decision, which did not raise the issue whether a test must be given or only made available within the two-hour period. The *Vietor* language apparently was drawn from the opinion in *People v. Gursey*, 22 N.Y.2d 224, 229, 239 N.E.2d 351, 353, 292 N.Y.S.2d 416, 419 (1968), extensively quoted in the decision, 261 N.W.2d at 831. *Gursey* in turn necessarily was grounded on a New York statutory requirement that such test be "*taken* within two hours of the time of the arrest." [2] N.Y.Veh. & Traf.Law § 1192(3) (McKinney Supp.1967) (emphasis added). The appearance of the word "administered" in *Vietor*, in relation to the chemical test time requirement, did not follow Iowa's statutory language. It would have been more accurate, while entirely consistent with the rationale applied in *Vietor*, to have used the word "provided."

Nor does this appeal require us to determine whether the two-hour limitation is a foundational requirement for introduction of the results of a chemical test. *Compare State v. Jensen*, 216 N.W.2d 369, 372 (Iowa 1974) (not listing any time requirement in an itemization of "standards for the [Iowa Code chapter 321B] procedure") *with State v. Schlemme*, 301 N.W.2d at 723 (Itemizing, as one of the "specific procedural requirements," "that the test be provided within two hours after the arrest.").[3] It is sufficient for the disposition of this case that the test was made available to defendant within the two-hour period, whether or not that period is a foundational requirement for the introduction of the test results in a criminal trial.

Although three of our decisions in addition to *Vietor* indicate by dictum that an Iowa Code chapter 321B test must be "giv-

---

**2.** There is a wide variance in the time requirements of state implied consent statutes. Ohio requires the blood to be "withdrawn within two hours of the time of the alleged violation." Ohio Rev.Code Ann. § 4511.19 (Baldwin 1983). Illinois, Minnesota, and Missouri statutes presently contain no reference to a time limitation as a prerequisite to the admission of chemical test results. *See* Ill.Ann.Stat. ch. 95½, §§ 11-501, .1, .2 (Smith-Hurd Supp.1985); Minn.Stat. § 169.121(2) (1984); Mo.Ann.Stat. §§ 577.-012-.020, .026-.029, .037-.041 (Vernon Supp. 1985). The Uniform Chemical Test for Intoxication Act, 9 U.L.A. 61 (Supp.1967), now with-

drawn, Master Ed.U.L.A. 64 (1985), contained no time limitation with respect to the test.

**3.** The crucial statutory language was in all material respects the same in both cases. The 1971 Iowa Code was applicable in *Jensen* and the last sentence in section 321B.3 provided, "However, if such peace officer fails to provide such test within two hours after such arrest, no test shall be required, and there shall be no revocation under the provisions of section 321B.7." Compare this language with the last sentence in Iowa Code subsection 321B.4(2), quoted above in this opinion, which was the statutory law in the *Schlemme* situation.

en" or "made" within two hours,[4] we came closest to an examination of the issue we face here in *Krueger v. Fulton,* 169 N.W.2d 875 (Iowa 1969).[5] There the officer gave the arrested person an opportunity to telephone his lawyer, invoked the Iowa Code chapter 321B procedures, and offered the arrested person a blood test. The arrestee refused, but later telephoned his attorney, with whom he eventually consulted. As the two-hour period wound down, the attorney advised the officer his client was requesting a blood test. The officer refused on the ground "the two-hour limitation period was up or about up and it was too late to take a blood test." *Id.* at 876. The commissioner of public safety appealed from district court's order vacating revocation of the arrestee's driver's license. The commissioner contended "the two-hour limitation applies only to a period when a test must be offered and that once the proper procedure has been followed and a refusal is made the officer is not required to wait until a two-hour period following arrest expires." *Id.* at 878. The arrestee argued he had the right to withdraw his refusal at any time within the two-hour period. *Id.* We reversed the district court ruling, reasoning that the officer had performed his duty when he offered the test and defendant had refused it, and to hold he was required to consider the refusal as subject to withdrawal would mean the officer "would practically be out of service for two hours." *Id.* at 879. We think *Krueger,* by implication, provides some support for the decision we reach in the case before us.

In determining the meaning of a statute, we give the language "the usual and ordinary meaning ... but the manifest intent of the legislature will prevail over the literal import of the words used." *American Home Products Corp. v. Iowa State Board of Tax Review,* 302 N.W.2d 140, 142–43 (Iowa 1981). "Provide" normally is defined

as meaning "to make available; supply; afford ... to furnish with." *Webster's New World Dictionary* 1144 (2d ed. 1976); *see also Webster's Third New International Dictionary* 1827 (1976) (Supply and furnish are synonyms for "provide."); *Usery v. Kennecott Copper Corp.,* 577 F.2d 1113, 1119 (10th Cir.1977) ("The meaning usually attributed to the word provide is to furnish, supply or make available."). Thus, using the ordinary meaning of "provide," the last sentence in section 321B.4 logically is construed to require only that the test be made *available* within the time period stated.

Moreover, the legislature used the word "administered" in the same sentence of the statute in which "provide" appears. The word "administered" in the last sentence of Iowa Code subsection 321B.4(2) relates to the time-triggering preliminary screening test. The legislature selected the word "provide" when referring to the chemical test to be offered the arrestee. Apparently the legislature was cognizant of the different meanings of these two words and intended to reinforce that difference by inserting both words in the statute.

▇ We hold officer Rader "provided" the blood test within the two-hour period when, in offering it to defendant, the latter was in a place where the necessary personnel and equipment were available to satisfy the foundational requirements of Iowa Code chapter 321B. *See* Iowa Code §§ 321B.3, .4, .15. That the blood was withdrawn approximately five minutes beyond that period would not make the test result inadmissible in this criminal case. Any language in our prior decisions indicating the specimen of bodily fluid must be taken within the two-hour time interval is withdrawn. We reverse and remand for further proceedings in conformance with this opinion.

REVERSED AND REMANDED.

4. *Fuller v. State Dept. of Transp.,* 275 N.W.2d 410, 411 (Iowa 1979); *Swenumson v. Iowa Dept. of Public Safety,* 210 N.W.2d 660, 662 (Iowa 1973); *State v. Findlay,* 259 Iowa 733, 737, 145 N.W.2d 650, 653 (1966).

5. The issue was raised in *State v. DeBerg,* 288 N.W.2d 348, 349–50 (Iowa 1980), but the district court decision was reversed on a different ground.