**STATE of Iowa, Appellee,**

v.

**Larry Dean MARTIN, Appellant.**

**No. 85–968.**

Supreme Court of Iowa.

March 19, 1986.

Randall C. Stravers of Clements, Blomgren & Pothoven, Oskaloosa, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and John E. Schroeder, Co. Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and WOLLE, JJ.

LARSON, Justice.

The defendant, Larry D. Martin, has appealed from his conviction of operating a motor vehicle while intoxicated (OWI). Iowa Code § 321.281(1)(a) (1983). He contends the court erred in admitting the results of a blood alcohol test and in overruling his objections to the court's instructions. We affirm.

At about 3:00 a.m. on September 1, 1984, the defendant was driving on a county road in Keokuk County. He struck another car, killing its driver and injuring himself. The county sheriff, who was apparently the first officer on the scene, arrived at 3:40 a.m. By this time, Martin had already been placed in an ambulance for delivery to a hospital. The hospital's treatment of the defendant was completed at 5:45 a.m. At 5:56 a.m., a deputy sheriff requested a blood sample. *See* Iowa Code § 321B.4 (1983). A sample was withdrawn at 6:12 a.m.

The results of the blood test were introduced at the defendant's OWI trial, showing an alcohol level of .081. An expert called by the State testified that, by the time the sample was taken, some of the alcohol would have been metabolized. Based on that fact, and on evidence of the amount of alcohol consumed by the defendant, he testified that the defendant's blood alcohol would have been approximately .140 at the time of the accident. (A blood alcohol test of .100 is presumptive evidence of intoxication. Iowa Code § 321.281(8) (1983). A test of .130 or more is a separate basis for conviction of OWI without proof that the driver was actually under the influence of alcohol. Iowa Code § 321.281(1)(b).)

I. *The Blood Test.*

The defendant challenges the State's use of the blood test on two grounds: First, he argues that Iowa Code section 321B.4(2), establishing a two-hour limit on the time to provide a test, was violated. Second, he argues that, if the two-hour limitation is not construed to be applicable to his case, the statute would violate the equal protection provisions of the United States and Iowa Constitutions.

Iowa Code section 321B.4 provides, in part, that

1..... The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle in violation of section 321.281, and if any of the following conditions exist:

*a.* A peace officer has lawfully placed the person under arrest for violation of section 321.281.

*b. The person has been involved in a motor vehicle accident or collision resulting in personal injury or death.*

*c.* The person has refused to take a preliminary breath screening test provided by this chapter.

*d.* The preliminary breath screening test was administered and it recorded ten hundredths or more of one percent by weight of alcohol in the blood.

2. The peace officer shall determine which of the four substances, breath, blood, saliva, or urine, shall be tested.

(Emphasis added.)

Authority to withdraw body samples, therefore, turns on a showing (1) that the officer had reasonable grounds to believe the defendant had violated Iowa Code section 321.281; and (2) that one or more of the tests of section 321B.4(1), lettered (a) through (d), was satisfied.

In this case, there is no argument about the officer's reasonable grounds to believe the defendant had violated section 321.281. The defendant concedes that point. There also is no question about the existence of the second showing required by section 321B.4, because the defendant had been involved in an accident with personal injury and a fatality. Iowa Code § 321B.4(1)(b). The defendant concedes that point also.

The defendant's challenge under section 321B.4 is based on the fact the test was not given within two hours of the time the sheriff had reasonable grounds to believe he had committed a violation of section 321.281. In relevant part, section 321B.4(2) provides that

> [i]f the peace officer fails to provide a test within two hours after the preliminary screening test is administered or refused or the arrest is made, whichever occurs first, a test is not required, and there shall be no revocation under section 321B.13.

A. The defendant points out that the two-hour limitation of section 321B.4 expressly applies to cases where the driver has been arrested, has failed the field test, or has refused such a test. *See* subsections (a), (c), and (d) of section 321B.4(1). He argues the two-hour limit should also apply in cases falling under subsection (b) (involvement in personal injury or fatal accident), although the statute does not expressly provide a time limit for those cases. He argues that the two-hour limit in the case of an accident should begin to run when the officer had reasonable grounds to believe an OWI violation had occurred. In his case, he claims, that would have been at 3:40 a.m., the time the sheriff first arrived at the scene of the accident. The blood test, requested at 5:56 a.m., was therefore sixteen minutes too late.

■ The district court rejected this argument, and so do we. Section 321B.4(2) imposes a two-hour limitation only in the cases where a preliminary screening test has been administered (or refused), or where the defendant has been arrested. Moreover, the events which trigger the running of the two-hour time limitation in those situations are clearly stated: The arrest, the administration of the field test, or the driver's refusal of the field test, will all start the time running under Iowa Code sections 321B.4(1)(a), (c), or (d), respectively. The test must be provided within two hours of the earliest of those events. *See* Iowa Code § 321B.4(2).

There is, however, no similar triggering event provided for cases falling under subsection (b) of 321B.4(1). For us to provide one would amount to creative interpretation. As we will discuss in the following division, the legislature's exclusion of this category of cases from the two-hour limitation was probably not a matter of oversight, but one which was based on a concern for the welfare of victims of accidents involving personal injury or death.

B. The defendant argues that, if the statute is held not to provide a two-hour limitation to his case, it would be vulnerable to an equal-protection argument.

■ As a part of this argument, he claims the statute creates a suspect classification, thus subjecting it to "strict scrutiny" analysis. Suspect classifications are generally based on race, alienage, or national origin. *See City of Cleburne v. Cleburne Living Center,* 473 U.S. ——, ——, 105 S.Ct. 3249, 3255, 87 L.Ed.2d 313, 320 (1985); *Lunday v. Vogelman,* 213 N.W.2d 904, 907 (Iowa 1973). This case obviously does not fall in any of those categories. The strict scrutiny test will also apply if a fundamental right is involved. *Cleburne,* 473 U.S. at ——, 105 S.Ct. at 3255, 87 L.Ed.2d at 320. *See, e.g., Kramer v. Union Free School District,* 395 U.S. 621, 626, 89 S.Ct. 1886, 1889, 23 L.Ed.2d 583, 589 (1969) (right to vote); *Shapiro v. Thompson,* 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600, 617 (1969) (interstate travel); *Loving v. Commonwealth of Virginia,* 388 U.S. 1, 11, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010, 1017–18 (1967) (marriage).

■ Any right of this defendant to have a body sample taken within two hours does

not rise to the level of a fundamental right for equal protection purposes.

Because the statute does not involve a suspect classification or a fundamental right, it is evaluated under the traditional test for equal protection. Under that test, the statute is presumed to be valid and will be sustained if the classification drawn is rationally related to a legitimate state interest. *Cleburne,* 473 U.S. at ——, 105 S.Ct. at 3255, 87 L.Ed.2d at 320; *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186, 195 (1981); *Lunday,* 213 N.W.2d at 907.

■ In this case, there is a rational relationship to a legitimate state interest. One legitimate state interest would be to protect the health and safety of persons involved in accidents resulting in injury or death. To impose on an officer a requirement that a test be provided within an arbitrary period of time after the accident could compromise the medical needs of the victims. We believe it is a legitimate state interest to give priority to those needs. We reject the defendant's equal-protection argument.

## II. *The Jury Instructions.*

A. The defendant argues that the court should not have instructed on the presumption of intoxication which arises at the level of .100, Iowa Code section 321.281(8), because his test showed the alcohol content to be only .081. He argues that the presumption instruction may only be given when the blood test actually showed a blood alcohol level of .100 or more.

■ We find no merit in this argument. Based upon the blood test, the State's expert testimony, and the amount of the defendant's actual consumption, the jury could reasonably conclude that his blood alcohol level was above .100 at the time of the accident.

B. As already noted, there are two ways a defendant may be convicted of OWI. A defendant driving under the influence of alcohol violates Iowa Code section 321.281(1)(a) (driving "while under the in-

fluence of an alcoholic beverage, a narcotic, hypnotic, or other drug, or any combination of such substances.") or, a defendant driving "[w]hile having thirteen hundredths or more of one percent by weight of alcohol in the blood" is guilty of OWI even if not shown to actually be under the influence. *See* Iowa Code § 321.281(1)(b). (The defendant refers to the latter alternative as the "per se" violation.)

In this case, the defendant was charged with both alternatives. At the conclusion of the State's evidence, the court sustained the defendant's motion to withdraw the charge under subparagraph (b) (driving with .130 blood alcohol) on the ground the evidence would not support it. However, the defendant complains that the court did not go far enough. He argues that, since the per se charge was not actually submitted to the jury, the court should not even have mentioned the fact that he was originally charged with it. Specifically, he complains about the court's introductory instruction which stated:

> On the 18th day of March, 1985, the County Attorney of this county filed with the clerk of this court a Trial Information charging the defendant, Larry Dean Martin, with the crime of operating while intoxicated and charges that Larry Dean Martin did, on or about the 1st day of September, 1984, operate a motor vehicle while under the influence of an alcoholic beverage *or while having a blood alcohol concentration of .13 or more, in violation of Section 321.281 of the Iowa Code, 1983, as amended.*

(Emphasis added.)

■ The per se violation, as set out in the emphasized language of the above instruction, was not actually submitted to the jury. Nevertheless, the defendant complains it was prejudicial for the court to even mention it. The court's instructions, however, made it clear that the State must prove the defendant actually was driving under the influence of alcohol. When the instructions are taken as a whole, the jurors could not reasonably understand that the per se alternative was being submitted

to it. Instruction No. 9 informed the jury that the State was required to prove that the defendant was operating a motor vehicle and at the time he was intoxicated. Instruction No. 7, moreover, defined the condition of being "under the influence" of alcohol. (The terms "intoxication" and "under the influence" were used interchangeably by the court, without objection.) The jury was also instructed that the trial information, which contained the only reference to the per se violation, was not to be considered by it as evidence.

As a practical matter, it could hardly be claimed that merely mentioning the alternative charge could have been prejudicial to the defendant. As of the time the motion to strike the per se alternative was sustained, the jury had already heard that the initial charge included the per se alternative. This is so because, pursuant to the rules, the county attorney's opening statement had included a reading of the trial information, which referred to both alternatives. *See* Iowa R.Crim.P. 18(1)(a)(1) (trial information to be read as part of county attorney's opening statement).

We find no merit in this argument.

AFFIRMED.