STATE of Iowa, Appellant,

v.

JoAnne Lacy KELLY, Appellee.

No. 88–197.

Supreme Court of Iowa.

Oct. 19, 1988.

**428**

Thomas J. Miller, Atty. Gen., Charles J. Krogmeier, Sp. Asst. Atty. Gen., Carolyn J. Olson, Asst. Atty. Gen., and Mark Sandon, Asst. Co. Atty., for appellant.

Steven K. Nalean of Nalean & Nalean, Boone, for appellee.

SNELL, Justice.

This is a discretionary review of a district court ruling suppressing evidence in a criminal prosecution for operating a motor vehicle while intoxicated, in violation of Iowa Code section 321J.2(1) (1987). The trial court granted the motion of defendant, JoAnne Lacy Kelly, to suppress evidence of an implied consent breath test that was offered two hours and nine minutes after Kelly was arrested and a preliminary breath test was administered. We reverse and remand for trial.

At approximately 3:00 p.m. on October 15, 1987, state trooper Rick Lampe was called to the scene of an automobile accident involving Kelly. At 3:54 p.m., while Kelly was at the hospital receiving treatment for her injuries, she was placed under arrest by Trooper Lampe, who shortly thereafter . administered a preliminary breath test. At 4:45 p.m., Kelly was released from the hospital and taken to the Boone, Iowa police station. At 5:10 p.m., Trooper Lampe made an oral request to Kelly for an intoxilyzer breath test, to which Kelly responded by requesting an opportunity to consult her legal counsel. Her attorney was located just before 6:00 p.m. After Kelly consulted briefly with him, she acceded at 6:03 p.m. to a written request for a breath test. The test was administered at approximately 6:10 p.m. and indicated Kelly had a blood alcohol concentration in excess of .10 percent.

In her motion to suppress, Kelly asserted evidence of the test was inadmissible because the written request for the test was not made within the two-hour limitation period provided by Iowa Code section 321J.6(2) (1987) as follows:

If the peace officer fails to offer a test within two hours after the preliminary

screening test is administered or refused or the arrest is made, whichever occurs first, a test is not required, and there shall be no revocation under section 321J.9.

The district court agreed, finding adherence to the two-hour limit to be a statutory foundational requirement for the admission of evidence of section 321J.6 tests. The State contends this conclusion was erroneous for two reasons. First, the State argues, the two-hour limit does not apply under the facts of this case, since much of the delay in making the written request was occasioned by Kelly's need for medical attention. Second, the two-hour limit only applies to license revocations for the refusal to be tested pursuant to our implied consent law, and does not constitute a foundational requirement for admission of evidence of those tests.

■ In support of its first argument, the State relies on our decision in *State v. Martin*, 383 N.W.2d 556 (Iowa 1986). In *Martin* we determined the two-hour limit did not apply where the officer's written request for the test was based solely on the defendant's involvement in a motor vehicle accident or collision resulting in personal injury or death. *Id.* at 559 (discussing section 321B.4(1)(b), the predecessor to section 321J.6(1)(b)). We noted the two-hour limit was only imposed where a preliminary screening test was administered or refused, or where the defendant had been arrested, but that no similar triggering event was provided for cases falling under the subsection regarding accidents with personal injury or death. *Id.*

In this case, contrary to *Martin*, a preliminary screening test was administered and the defendant was arrested. By the express terms of section 321J.6(2), these triggering events imposed the two-hour limit. We decline to ignore these triggering events in cases which we could determine, in retrospect, also fell under the subsection regarding accidents with personal injury or death. The two-hour limit, commencing at 3:54 p.m., when Kelly was placed under arrest, applied to this case.

■ Moreover, it is not disputed the two-hour limit was not satisfied here. The written request was not made to Kelly until two hours and nine minutes after her arrest. The oral request at 5:10 p.m. was not sufficient, under our cases, to comply with the statute. *See State v. Richards*, 229 N.W.2d 229, 233 (Iowa 1975) (the written request is one of the foundational requirements for admissibility of blood analyses made pursuant to the implied consent statute).

We must now determine whether the two-hour limit is a foundational requirement for the admission of evidence of section 321J.6 tests in a prosecution for operating a motor vehicle while intoxicated, in violation of section 321J.2(1) (1987). In previous cases we have alternately implied the two-hour limit is and is not a foundational requirement. *Compare State v. Schlemme*, 301 N.W.2d 721, 723 (Iowa 1981) (time limit was listed in an itemization of procedural requirements under chapter 321B) *with State v. Jensen*, 216 N.W.2d 369, 372 (Iowa 1974) (time limit was not listed under a similar itemization). We have not, however, yet addressed the issue directly. *See State v. Stoneking*, 379 N.W.2d 352, 355 (Iowa 1985).

■ In doing so now, we think it important to note the general purpose of chapter 321J and the specific purposes of the procedural requirements contained therein. Chapter 321J is designed "to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor." *See State v. Hitchens*, 294 N.W.2d 686, 687 (Iowa 1980); *Severson v. Sueppel*, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (1967). The purpose of its procedural requirements is "to protect the health of the person submitting to a test and to guarantee its accuracy for use in later judicial proceedings." *State v. Wallin*, 195 N.W.2d 95, 97 (Iowa 1972). As stated in *State v. Schlemme*, 301 N.W.2d at 723–24:

> In effectuating these purposes and balancing them against the general purpose of the statute, we have not hesitated to hold evidence inadmissible when the

standards were not complied with and thus endangered health or the accuracy of the test. *See, e.g., State v. DeBerg,* 288 N.W.2d 348, 350 (Iowa 1980) (State failed to prove syringes and needles were originally factory wrapped and disposable); *State v. Smith,* 272 N.W.2d 859, 860–62 (Iowa 1978) (urine placed in blood test bottle containing anticoagulant with no testimony as to effect of this mixture); *State v. Richards,* 229 N.W.2d 229, 233 (Iowa 1975) (peace officer failed to make timely written request of defendant to submit to blood test); *State v. Wallin,* 195 N.W.2d at 98 (peace officer failed to make written request directing physician to withdraw blood, and syringe and needles did not meet statutory specifications); *State v. Shelton,* 176 N.W.2d 159, 161 (Iowa 1970) (evidence failed to establish that nurse had been designated by licensed physician to withdraw blood and failed to establish that proper syringe was used).

However, we have adhered to the general purposes of the chapter and allowed admission of evidence when objections based upon specific lack of foundation requirements did not endanger the defendant's health or did not endanger the accuracy of the test. *See, e.g., Schmoldt v. Stokes,* 275 N.W.2d [209] at 210 [Iowa 1979] (when original arresting officer did not demand test, subsequent qualified officer who rearrested defendant could request test); *State v. Winquist,* 247 N.W.2d 256, 259 (Iowa 1976) ("medical technologist" as used in statute dependent upon training as microbiologist and experience in withdrawal of blood and not technical requirement of certification by American Society of Clinical Pathologists); *Janson v. Fulton,* 162 N.W.2d [438] at 441–42 [Iowa 1968] (language in statute requiring physician, medical technologist, or registered nurse designated by licensed physician to withdraw "body substances" does not prevent peace officer from taking urine, breath, or saliva sample as legislature did not intend literal construction); *Severson v. Sueppel,* 260 Iowa at 1174, 152 N.W.2d at 284 (peace officer who did not see defendant drive may rely on observations of other peace officers for reasonable grounds to believe that he was guilty of offense).

Thus, whether a particular statutory provision was intended to also constitute a foundational requirement may be ascertained by determining whether a failure to comply with it endangered the defendant's health or the accuracy of the test.

■ We can conceive of no circumstances under which the failure to make the written request within the two-hour limit would endanger the defendant's health. Nor are we persuaded the accuracy of the test would be endangered to the defendant's prejudice by such a delay. It is common knowledge "the human body dissipates alcohol rapidly." *State v. Vietor,* 261 N.W.2d 828, 831 (Iowa 1978) (quoting *People v. Gursey,* 22 N.Y.2d 224, 292 N.Y. S.2d 416, 417, 239 N.E.2d 351, 352 (1968)). A lapse of time in excess of two hours in the administration of the test would therefore result in a decrease, not an increase, in the defendant's blood alcohol concentration. *See, e.g., State v. Armstrong,* 236 Kan. 290, 294, 689 P.2d 897, 901 (1984); *Willis v. State,* 302 Md. 363, 380, 488 A.2d 171, 180 (1985).

Further support for the conclusion the two-hour limit is not a foundational requirement may be found in the framework of chapter 321J. Section 321J.6(2), providing for the two-hour limit, does not proscribe testing after the time period had run; it merely states "a test is not required" after the two hours have expired. It then provides a refusal to consent to a test at that time shall not result in revocation of the defendant's driver's license under our implied consent law. Iowa Code § 321J.6(2) (1987). The effect of these provisions is to provide a point after which the defendant's consent to testing shall no longer be implied and the defendant shall no longer be subject to a penalty for refusing to consent. That such a chronological line of demarcation has been statutorily drawn is not to say, however, the results of tests made with the defendant's consent and in conformity with the other provisions of section 321J.6 are inadmissible as lacking suf-

ficient foundation. This distinction is recognized in sections 321J.15 and 321J.18. Section 321J.15 provides:

Upon the trial of a civil or criminal action or proceeding arising out of acts alleged to have been committed by a person while operating a motor vehicle in violation of section 321J.2, evidence of the alcohol concentration or the presence of drugs in the person's body substances at the time of the act alleged as shown by chemical analysis of the person's blood, breath, or urine is admissible. If it is established at trial that an analysis of a breath specimen was performed by a certified operator using a device and methods approved by the commissioner of public safety, no further foundation is necessary for introduction of the evidence.

Section 321J.18 provides:

This chapter does not limit the introduction of any competent evidence bearing on the question of whether a person was under the influence of an alcoholic beverage or a drug, including the results of chemical tests of specimens of blood, breath or urine obtained more than two hours after the person was operating a motor vehicle.

We think it is clear from a reading of our cases and the statutes comprising chapter 321 that the legislature intended the two-hour limitation established by section 321J.6(2) to apply only to a driver's license revocation under section 321J.9. We hold that the two-hour requirement under section 321J.6(2) is not a foundational requirement for the admissibility of evidence in an OMVI prosecution.

There is some suggestion in Kelly's brief that her consent to the breath test was not voluntary. This issue was not, however, raised in her motion to suppress. Nor was it addressed by the district court in its ruling, which dealt solely with the foundational issue. As such, the voluntariness question is not currently before us. *See State v. Washington,* 257 N.W.2d 890, 895 (Iowa 1977); *State v. Williams,* 207 N.W.2d 98, 110 (Iowa 1973).

REVERSED AND REMANDED FOR TRIAL.

All Justices concur except SCHULTZ, CARTER and LAVORATO, JJ., who dissent.

SCHULTZ, Justice, dissenting.

As I believe that the written request for submission to a chemical test is a foundational requirement for the admission of compulsory test results under Iowa Code chapter 321J, I must respectfully dissent. Additionally, I fail to see how a test administered under the compulsion of the implied consent procedure may somehow be determined to be a voluntary submission to a test.

Iowa Code section 321J.6(2) specifically provides that if "the peace officer fails to offer a test within two hours after the preliminary screening test is administered or refused or the arrest is made, whichever occurs first, *a test is not required.*" (emphasis added). The majority takes the position that the time period is not a foundational requirement for the admission of the test. While we have not specifically held meeting the time element is a foundational requirement, we have often indicated this condition must be met. *State v. Martin,* 383 N.W.2d 556, 559 (Iowa 1986) (section 321B4(2), a predecessor statute, "imposes a two-hour limitation"); *State v. Vietor,* 261 N.W.2d 828, 831 (Iowa 1978) ("a chemical test is to be administered within two hours of the time of arrest or not at all"); *State v. Richards,* 229 N.W.2d 229, 233 (Iowa 1975) (the state could not satisfy the foundational requirements for admission of the test by a written request following the test as it is untimely); *State v. Wallin,* 195 N.W.2d 95, 97 (Iowa 1972) (in listing the protective standards of a predecessor statute, we stated that the test must be given within "two hours after arrest"). In *State v. Stoneking,* 379 N.W.2d 352 (Iowa 1985), the test was demanded within the two-hour period but, due to defendant's delay by speaking with his lawyer, the test was not administered within the time period. The State urged that the two-hour period was not a foundational requirement. We avoided the issue by holding the test need only

be offered within the two-hour period. *Id.* at 356. I believe that the plain language of the statute requires that the test be offered within two hours. I further believe that the comments in our cases have indicated such a requirement must be met before the evidence of test results is admissable.

If we follow the reasoning of the majority opinion, we have an anomalous result. We would allow the admission of evidence obtained by deceit. The defendant was informed orally and in writing that a failure to submit to the test would result in the loss of her driver's license. This is not true. We should not reward this deception by admitting the fraudulently obtained evidence. Rather, the exclusionary rule should apply, making the evidence inadmissible. *See Vietor*, 261 N.W.2d at 832.

Finally, the majority opinion indicates that error was not preserved on the issue of voluntariness of the consent. The State does not claim the consent was given voluntarily. Obviously the consent to the test was not voluntary. It was compelled by the implied consent procedures with its false threat of a license revocation. The real issue before the court has been preserved. Should we allow the admission of evidence secured by deceit? I think not.

CARTER and LAVORATO, JJ., join this dissent.