# IN THE SUPREME COURT OF IOWA

No. 18–2239

Submitted January 20, 2021—Filed March 26, 2021

**STATE OF IOWA,**

Appellee,

vs.

**JOHN CHARLES DONAHUE,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Audubon County, Jeffrey L. Larson, Judge.

Defendant seeks further review from court of appeals decision affirming his conviction of sexual abuse in the third degree. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Appel, J., delivered the opinion of the court, in which all participating justices joined. Christensen, C.J., took no part in the consideration or the decision of the case.

Nathan A. Olson (argued) and Christine E. Branstad of Branstad & Olson Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Richard Bennett (argued) and Douglas Hammerand, Assistant Attorneys General, and Sarah Jennings, County Attorney, for appellee.

**APPEL, Justice.**

In this case, defendant John Donahue appeals his conviction of sexual abuse in the third degree in violation of Iowa Code sections 709.1(1), 709.4(1)(*a*), and 702.17 (2014). On appeal, Donahue argues that the district court abused its discretion when it prohibited him from cross-examining the victim about a prior sexual incident between Donahue and the victim at a different time and place from the crime that gave rise to the charges. Donahue also challenges a jury instruction, which deviated from the model instructions and made reference to "sexual offenses" in a fashion that Donahue claims prejudiced him as he was only charged with one sexual offense. Finally, Donahue claims that the evidence offered by the victim was too vague and insufficient to amount to substantial evidence to support the jury's guilty verdict.

We transferred the case to the court of appeals. The court of appeals affirmed Donahue's conviction. We granted further review. For the following reasons, we affirm Donahue's conviction.

### I. Background Facts and Proceedings.

**A. Introduction.** T.G. lived with her biological mother in Estherville, Iowa. T.G. moved to Audubon, Iowa, to live with her father and his wife after the Iowa Department of Human Services removed T.G. and her siblings from her biological mother's house due to what T.G. described as physical and mental abuse. T.G.'s grandfather, John Donahue, lived two blocks away from the home where T.G. resided in Audubon. T.G. and her other siblings would often visit Donahue in his home. T.G. claimed that Donahue sexually abused her in his home.

After amending its original charges, the State alleged that Donahue committed third-degree sexual abuse against T.G. According to the charge, Donahue "during the time period of July 31, 2014 through

August 26, 2016, in Audubon County, Iowa, did commit sexual abuse by performing a sex act by force or against the will of a person."

### B. Proceedings in District Court.

1. *First trial proceedings.* The first trial resulted in a mistrial as the jury could not reach a verdict. Prior to the first trial, Donahue filed a motion in limine. Paragraph 2 of the motion sought an order from the court "[t]hat the jury not be told at any time by the State or the State's witnesses about any alleged prior bad acts by the Defendant." The State resisted, asserting that under *State v. Spaulding*, prior acts with the victim are admissible "to show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." 313 N.W.2d 878, 880 (Iowa 1981) (en banc) (quoting *McCormick's Handbook on the Law of Evidence* § 190, at 449 (Edward W. Cleary ed., 2d ed. 1972)).

At a May 14, 2018 hearing on the motions in limine, the defense counsel stated that "I think the State may be right as far as that the State's allowed to bring up allegations that include this certain victim and this certain Defendant." But the defense reiterated its objection to other prior act evidence involving the defendant. After hearing from counsel, the district court stated that the defense motion is "overruled as to the propensity of any acts between the alleged victim and the Defendant" and that "in all other aspects of bad acts will be sustained."

Just before the first trial on June 26, however, the State raised the question of whether the parties would explore "a prior incident . . . alleged by the victim with the defendant in Carroll, Iowa." The State represented that although it could bring the issue up under *Spaulding*, it did not plan to do so. The State argued that the defendant could not bring up the incident consistent with Iowa's rape shield rule, noting that the defendant had not filed any affidavits in connection with the proposed evidence.

When the district court asked the defendant if he "intend[ed] to get into [the] Carroll issue," the defense stated: "No, Your Honor. We did have some discussion about that, but we don't intend to." The district court entered an oral order granting paragraph 2 and other paragraphs of Donahue's motion in limine.

The first trial ended in a mistrial after the jury became deadlocked during deliberations.

2. *Second trial proceedings.* A second jury trial commenced on October 30. Before evidence was received, the district court asked the parties if anyone wanted to be heard on the motions in limine, noting that the court had previously ruled that paragraphs 1 through 7 of defendant's motion would be sustained. No party wanted to be heard and the court stated, "Then that's going to be the Court's order . . . ."

During the State's opening statement at the second trial, the State described a pattern of sexual abuse by Donahue of T.G.:

> After years of turmoil and instability in this little girl's life, it finally looked like she had found a safe haven. But as the facts will show, the Donahue home was anything but safe for [T.G.]. Because this man, Papa, sexually abused her repeatedly during the time that she lived with her dad.

> [T.G.] will tell you that once the abuse started, it happened virtually every single time that she was alone with him. It started with grooming behavior: Gifts, expensive gifts that he only bought for her; he would give her money, just her; he would spend extra time with her.

> This happened so many times over such a long period of time that only a few occasions stand out in [T.G.]'s mind. But one of those occasions, she'll describe it to you.

The State called T.G. as a witness. T.G. provided detailed testimony of the alleged incident in Audubon for which Donahue was on trial. During the State's questioning of T.G. about the Audubon incident, the State asked T.G. during the time period when the alleged incident occurred

whether Donahue showed her affection in any way. T.G. responded "Yes." The State asked specifically what kind of affection. T.G. replied, "Hugs us and kiss us." The State asked T.G. to specify where she was kissed, to which she replied, "On the lips." The State asked T.G. how that made her feel, and T.G. responded, "Uncomfortable."

The State continued by asking T.G. whether Donahue did anything else in the house which made T.G. feel uncomfortable and asked her to describe what occurred. T.G. replied yes, but before describing the event, the State said: "Let me back up. Did this happen -- when you're thinking of, did it happened more than one time?" To which T.G. replied yes. The State asked no further questions related to any instance aside from the Audubon incident. T.G. provided specific detailed testimony about the Audubon incident, saying that Donahue digitally penetrated her vaginal area.

In proceedings outside the presence of the jury, Donahue's lawyer told the court that the defense sought to cross-examine T.G. about a specific incident from "the deposition that [T.G] had given November of 2017, [where] she spoke at length about an incident in Carroll, Iowa of the defendant inappropriately touching her there, and we were attempting to explore that here today, Your Honor." The State objected. According to counsel for the state:

> [M]y recollection was from the last trial that we weren't going to get into the incident in Carroll, and I guess I made the assumption -- because no one said otherwise -- that that was going to be the same in this situation, so I did not ask her about the Carroll incident. . . .
>
> . . . .
>
> . . . [W]e just assumed everything was carrying over -- the same agreements, the same motions in limine that were carrying over.

The State further contended that while the State could use the incident at Carroll to show motive or fabrication, it could not be used by the defense as impeachment evidence since T.G. did not testify about it on direct examination.

In response, Donahue argued that the State had opened the door by suggesting that T.G. had been assaulted by Donahue multiple times. While the defense recognized that at the morning of the first trial, an agreement had been reached not to explore the Carroll incident, there was no such agreement at the second trial. When asked by the court if the defense wanted to explore the Carroll incident in detail, the defense replied "Yes."

The district court took the matter under advisement and adjourned for the day. Prior to trial the following day, the district court took up the matter again.

The State elaborated on its position at the reconvened hearing. The State asserted there were two reasons to decline Donahue's request. First, the State asserted that the district court's order on the motion in limine covered the matter and that the defense was bound by it. Second, the State contended that the evidence would be inadmissible under the rape shield rule.

Donahue did not contest the State's assertion that the Carroll incident was within the scope of the motion in limine but claimed that the event occurred after the alleged crime and therefore was not covered by it. The defense conceded that it did not comply with the ordinary notice requirements of the rape shield rule but declared without elaboration that "it's our position that the Rape Shield Law is not applicable." Finally, Donahue claimed that the State had opened the door through T.G.'s testimony.

After hearing from the parties, the district court ruled that it would not allow Donahue to cross-examine T.G. about the Carroll incident. The district court adopted both grounds advanced by the state: the ruling on the motion in limine prohibited admission and admission of the evidence by the defense would violate the rape shield rule. The district court added that it would not have made the ruling if there had been a clear discussion of the Carroll incident in the testimony at trial. The district court further refused to permit Donahue to recall T.G. as a witness to elicit testimony about the Carroll incident. The district court stated that if such testimony were permitted, "the State would be allowed to bring in testimony and witnesses with regard to something that happened in Carroll." After the district court's ruling on the Carroll matter, trial reconvened.

After the close of evidence, the parties reviewed the district court's proposed jury instructions. Donahue objected to the court's proposed Instruction No. 20 which stated that "[t]here is no requirement that the testimony of a victim of sexual offenses be corroborated, and her testimony standing alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty." Donahue requested that the court use the model jury instructions for reasonable doubt. The court overruled Donahue's objection, leaving Instruction No. 20 as originally written and stating that the instruction was proper based on *State v. Barnhardt*, No. 17–0496, 2018 WL 2230938 (Iowa Ct. App. May 16, 2018).

After trial, the jury convicted Donahue of third-degree sexual abuse.

**C. Court of Appeals Decision.** Donahue appealed his conviction. On appeal, Donahue argued that the district court erred when it denied Donahue the opportunity to explore the Carroll incident through the testimony of T.G. Donahue further argued that the district court committed error by utilizing Instruction No. 20 over the defense objection.

Finally, Donahue argued there was insufficient evidence to support the verdict. The court of appeals affirmed the district court. We granted further review.

## II. Standard of Review.

We review evidentiary rulings by the district court for abuse of discretion. *State v. Thompson,* 836 N.W.2d 470, 476 (Iowa 2013). Specifically, we review the inadmissibility of evidence under Iowa Rule of Evidence 5.412 (the rape shield rule) for abuse of discretion. *State v. Alberts*, 722 N.W.2d 402, 407–08 (Iowa 2006). We reverse the district court's admission as an abuse of discretion when the grounds for admission were "clearly untenable or clearly unreasonable." *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017).

To the extent Confrontation Clause claims are raised, we review them de novo. *State v. Rogerson,* 855 N.W.2d 495, 498 (Iowa 2014).

"[W]e review challenges to jury instructions for correction of errors at law." *Alcala v. Marriott Int'l, Inc.,* 880 N.W.2d 699, 707 (Iowa 2016) (quoting *Anderson v. State,* 692 N.W.2d 360, 363 (Iowa 2005)). Errors in jury instructions require reversal if prejudice results. *State v. Coleman,* 907 N.W.2d 124, 138 (Iowa 2018). And, "unless the record affirmatively establishes there was no prejudice," we presume errors in jury instructions are prejudicial. *State v. Hanes,* 790 N.W.2d 545, 551 (Iowa 2010).

"We review the sufficiency of the evidence for correction of errors at law." *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018). "We view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Tipton,* 897 N.W.2d 653, 692 (Iowa 2017) (quoting *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005)). We determine evidence is sufficient when the record contains substantial

evidence to support conviction. *Kelso-Christy*, 911 N.W.2d at 666. "Substantial evidence exists when the evidence 'would convince a rational fact finder the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Meyers*, 799 N.W.2d 132, 138 (Iowa 2011)).

**III. Discussion.**

**A. Admissibility of Prior Acts Evidence.**

1. *Positions of the parties.* On appeal, Donahue contends that the district court abused its discretion when it precluded him from cross-examining or offering direct evidence through T.G. about the Carroll incident. Donahue argues that the State opened the door to cross-examination of the prior incident in Carroll through its opening argument and direct examination of T.G—both of which alluded to multiple instances of sexual abuse. Donahue argues that cross-examination was necessary to impeach T.G. for the allegedly false Carroll accusation. Donahue claims that because the Carroll accusation was false, Iowa's rape shield rule does not bar cross-examination of prior sexual behavior of T.G. Donahue also claims that the procedural requirements of the rape shield rule do not apply because the evidence concerned an issue that had newly arisen since the State opened the door.

The State contends that it did not open the door to questioning about the Carroll incident. The State claims that any talk of other incidents involved only other incidents of abuse that occurred in the Audubon home, not in Carroll. The State also argues that the rape shield rule applies because Donahue never demonstrated that the Carroll allegations were false. The State further argues that if Donahue wanted to claim that the allegation was false, he needed to comply with the procedural requirements of the rape shield rule which require a hearing outside of the presence of the jury to determine admissibility.

2. *Error preservation.* The State argues that many of Donahue's claims are not preserved on appeal. The State claims that Donahue offered no reason to the trial judge for why cross-examination was necessary to develop information about the Carroll incident. In other words, the State claims that Donahue failed to make a sufficient offer of proof on exactly how the Carroll incident related to the case. Donahue made no offer of proof, for instance, showing that the Carroll statements were false and thus admissible under the rape shield rule.

The State also argues that at trial, Donahue did not contest the proposition that the district court's rulings on the motion in limine were binding on the parties. The State notes that Donahue only argued that the ruling did not apply to prior acts that occurred after the crime but prior to trial.

Donahue counters that he preserved error when, after the State objected to his cross-examination of T.G., he argued that the motion in limine was not applicable to the second trial and that the rape shield rule did not apply, which both put the district court on notice that Donahue's implied argument was that the Carroll allegation was false and that the district court was aware of Donahue's argument that the State opened the door to the cross-examination through its opening statement and direct examination of T.G. Donahue argues that the district court erroneously ruled on each of those arguments and, when considered in combination with the notice to appeal, preserved error on the issues.

3. *Discussion.* We begin with reviewing the posture of the case at the second trial. The district court had definitively ruled on paragraph 2 of the motion in limine at the second trial, namely, that evidence of prior acts was not coming in at trial. We have our doubts whether the district court's ruling on the motion in limine was sufficiently broad to cover the

Carroll incident. Yet, we note that the record suggests that the parties may have assumed that the Carroll incident was within the scope of the court's ruling on the motion in limine. Indeed, at trial, Donahue did not argue that the motion in limine ruling was inapplicable but instead claimed that the prosecution opened the door on the testimony.

We now turn to the question of the applicability of our rape shield rule. Iowa Rule of Evidence 5.412(*a*)(1) prohibits the use of evidence "in a criminal proceeding involving alleged sexual abuse" if the evidence is "offered to prove that a victim engaged in other sexual behavior." The rule is meant to "(1) protect the privacy of victims, (2) encourage reporting, and (3) prevent time-consuming and distracting inquiry into collateral matters." *State v. Mitchell*, 568 N.W.2d 493, 497 (Iowa 1997). There are several exceptions to the general prohibition in the rule. For example, prior sexual behavior may be offered to show that a person other than the defendant was the perpetrator, the sexual encounter was consensual, or, if excluded, the constitutional rights of the defendant would be violated. Iowa R. Evid. 5.412(*b*)(1)(A)–(C). In addition, a false accusation of a sexual encounter is not protected by the rule. *See State v. Baker*, 679 N.W.2d 7, 10–11 (Iowa 2004).

While Donahue is right that a false accusation of a sexual encounter is not protected by the rape shield rule, a defendant who wishes to argue that a witness is making a false claim must first comply with a set of procedural hurdles. *See* Iowa R. Evid. 5.412(*c*); *State v. Trane*, 934 N.W.2d 447, 457 (Iowa 2019). Under the rule, the defendant must first "file a motion to offer the evidence at least 14 days before trial" and include with the motion an offer of proof "specifically describ[ing] the evidence and stat[ing] the purpose for which the evidence is to be offered." Iowa R. Evid. 5.412(*c*)(1)(A), (C). If the offer of proof demonstrates that the evidence may

be admissible under one of the rape shield exceptions, an in camera hearing is conducted to determine whether the evidence is admissible. *Id.* r. 5.412(*c*)(2). The evidence is admissible when it is relevant and the probative value outweighs any danger of unfair prejudice. *Id.* r. 5.412(*c*)(2)(C); *see also Trane*, 934 N.W.2d at 457; *Alberts*, 722 N.W.2d at 409 ("[The defendant] must first make a threshold showing to the trial judge outside the presence of the jury that (1) the complaining witness made the statements and (2) the statements are false, based on a preponderance of the evidence."). The procedural hurdles may be overcome if "the court determines that the evidence is newly discovered and could not have been obtained earlier through the exercise of due diligence, or that the evidence relates to an issue that has newly arisen in the case." Iowa R. Evid. 5.412(*c*)(1)(A).

It is clear that Donahue did not comply with the procedural requirements and thus has not established a basis to escape the prohibitions of our rape shield rule.[1] Nonetheless, Donahue argues that the evidence related to a newly arisen issue in the case because the State opened the door to the Carroll incident. *See Stringer v. State*, 522 N.W.2d 797, 800–01 (Iowa 1994) (discussing the difference between opening the door and an improper question). So, a key question becomes whether the State's opening statement and direct examination referred to or discussed an incident in Carroll in a fashion sufficient to permit the defense to develop the issue further.

---

[1] The lack of an offer of proof makes it impossible for us to determine if the evidence is admissible and, as a result, could give rise to a Confrontation Clause claim under the United States or Iowa Constitutions. *See Thompson v. State*, 492 N.W.2d 410, 414 (Iowa 1992) ("[The rape shield rule] is an exception to the general rule that relevant evidence is admissible. . . . [E]ven relevant evidence is not constitutionally required to be admitted if the prejudicial effect outweighs the probative value." (citations omitted)); *State v. Parsons*, 401 N.W.2d 205, 208 (Iowa Ct. App. 1986) ("The Constitution . . . requires only the introduction of relevant and admissible evidence.").

Based on our review of the trial record, Donahue's argument that the State opened the door is not persuasive. There was a brief mention of multiple incidents in the opening statement, but the statement was made in the context of Donahue's home in Audubon being "anything but safe" for T.G. We note there was no defense objection to the statement. Further, in the State's direct examination of T.G., T.G. responded "Yes" to the State's question about whether abuse had occurred multiple times. But again, the question about multiple instances of abuse was linked to events that occurred in Donahue's home. We agree with the district court's conclusion that this brief testimony did not open the door to exploration of an incident in Carroll.

Assuming that the State did open the door in a fashion that excuses compliance with the fourteen-day notice provision, Donahue still cannot prevail on his effort to avoid the prohibition of Iowa Rule of Evidence 5.412. As noted in *State v. Trane* and *State v. Alberts*, if a defendant wishes to introduce evidence of a false prior accusation, it has the obligation of making a satisfactory offer of proof before the district court. *Trane*, 934 N.W.2d at 457–58; *Alberts*, 722 N.W.2d at 409. Under the approach endorsed in *Alberts*, the defendant must show by a preponderance of the evidence "that (1) the complaining witness made the statements and (2) the statements are false." *Alberts*, 722 N.W.2d at 409. In this case, Donahue made no such showing. Instead, the defense simply stated that it wished to explore an incident in Carroll, Iowa.

For the forgoing reasons, we determine that the district court did not abuse its discretion when it prohibited Donahue from questioning T.G. about the Carroll incident.

**B. Jury Instruction No. 20.** The district court submitted Instruction No. 20 to the jury which stated, "There is no requirement that

the testimony of a victim of sexual offenses be corroborated, and her testimony standing alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty." Donahue argues that the instruction was in error because it deviated from the model instructions and those approved of by *Barnhardt*, 2018 WL 2230938, at *4. Donahue specifically attacks the instruction because it includes the plural phrase "sexual offenses" when Donahue was only charged with one crime. Donahue argues that the instructions prompted the jury to ponder the multiple acts and therefore prejudiced his conviction.

The State argues that an instruction which states that there is no requirement for corroboration of the testimony of sexual abuse victims is an accurate statement of the law. *See, e.g.*, *State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995) (en banc). The State argues that Donahue did not preserve the specific claim regarding the use of the plural term "sexual offenses" in the instruction because Donahue only generally objected to the failure of the district court to follow the wording of the model jury instruction.

In any event, the State maintains that the use of the plural term "sexual offenses" could not have confused the jury. The State notes that in closing argument, the prosecutor clearly stated that only one act of sexual abuse had been proved. Further, the jury instructions as a whole clearly advised the jury that one crime had been charged.

Even assuming Donahue's general objection to the jury instruction preserves error as to his specific claim that the word "sexual offenses" was erroneous and prejudicial, we find his claim of instructional error fails on the merits. We read jury instructions as a whole to determine their accuracy. *See, e.g.*, *State v. Benson*, 919 N.W.2d 237, 241–42 (Iowa 2018); *State v. Martin*, 383 N.W.2d 556, 560–61 (Iowa 1986). Clearly, the

instructions read as a whole do not imply that Donahue was being charged with multiple offenses.

Indeed, the first sentence of the instructions reads: "The State has charged John Charles Donahue with the crime of Sexual Abuse in the Third Degree." No ambiguity here. And, the marshalling instruction, Instruction No. 14, stated that "[t]he State must prove all of the following elements of Sexual Abuse in the Third Degree: 1. During the time period of July 31, 2014, through August 26, 2016, the Defendant performed *a sex act* with T.G." (Emphasis added.) The marshalling instruction uses the singular "a sex act." Given the complete context of the instructions, we think the jury would not have been misled by the use of the plural term "sexual offenses" in Instruction No. 20. Further, because the crime of sexual abuse in the third degree has lesser included offenses, the plural term would simply apply to each of the lesser included offenses as well as the greater crime.

**C. Sufficiency of Evidence.** Finally, Donahue claims that the evidence of T.G.'s testimony was insufficient to support conviction because it was not credible. Donahue argues that there was no physical evidence, T.G. could not articulate specific dates of abuse, T.G. changed her story depending on with whom she spoke, and the sex act was not committed with force or against T.G.'s will because she voluntarily continued to be in Donahue's presence after the alleged incident.

The State argues that evidence was sufficient because corroborating evidence of a victim's testimony is not necessary to support conviction. The State notes that its expert at the trial presented evidence demonstrating that child victims often have trouble recalling details of attacks and fail to report sex abuse crimes in a timely fashion. The State also argues that T.G.'s testimony demonstrated that her reason for a

delayed report of the abuse was because Kimberly was present during the police questioning of the incident, and since Kimberly is Donahue's biological granddaughter, T.G. felt that her report might not be believed. Finally, the State argues that to demonstrate that a sex act was against the victim's will, physical or verbal protests are not necessarily required.

We agree with the State. A sexual abuse victim's testimony alone may be sufficient evidence for conviction. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998); *Knox*, 536 N.W.2d at 742. As a result, Donahue's argument that T.G.'s testimony is not credible enough to convince a rational fact finder of his guilt beyond a reasonable doubt is unavailing for sufficiency of the evidence purposes. Inconsistencies and lack of detail are common in sexual abuse cases and do not compel a jury to conclude that the victim is not credible or that there is insufficient evidence to support a guilty verdict. *See, e.g.*, *State v. Walker*, 935 N.W.2d 874, 881–82 (Iowa 2019); *Hildreth*, 582 N.W.2d at 170; *State v. Rankin*, 181 N.W.2d 169, 172 (Iowa 1970).

Donahue's argument that the evidence was insufficient to establish a sex act was perpetrated by force or against T.G.'s will is also unpersuasive. Iowa Code section 709.1 provides that sexual abuse occurs when an act is committed "against the will of the [victim]." We have determined that "the focal point of the crime of sexual abuse is consent." *Kelso-Christy*, 911 N.W.2d at 666. And the element of consent "turns on the intentions and mental state of the victim." *Id.*

Donahue argues that there was no evidence that T.G. told him "to stop, said no, pushed his hand away, or otherwise provided any indication that the alleged interaction was against the will of T.G." While verbal and physical resistance may demonstrate a lack of consent, they are not required. *See, e.g.*, *Meyers*, 799 N.W.2d at 146 ("[W]e conclude

psychological force or inability to consent based on the relationship and circumstance of the participants may give rise to a conviction under the 'against the will' element of section 709.4(1). This statutory element considers all circumstances that establish actual nonconsent, including any psychological circumstances particular to the participants."); *State v. Bauer*, 324 N.W.2d 320, 322 (Iowa 1982) ("We believe, however, that the jury could—and obviously did—believe complainant when she testified to fear which rendered her incapable of protest or resistance. This is all our statute demands.").

And, there is sufficient evidence from T.G.'s testimony that the action was against her will. T.G. testified that the sex act made her feel very uncomfortable and that she was confused, did not know why Donahue was doing it, and was scared. When asked about what she was thinking during the act, T.G. testified that she wondered "[w]hen is he going to stop, or what am I supposed to do afterwards." When asked why she did not tell Donahue to stop, she replied: "Well, I was really scared. Never had this happen to me before, and I didn't know what to do."

Finally, when asked whether the act was against her will, she replied "Yes." T.G. actually testified that the action was against her will and her testimony demonstrated fear and confusion about the action. Taking the evidence in the light most favorable to the State, a rational fact finder could be convinced beyond a reasonable doubt that Donahue's action was against T.G.'s will.

Because a rational fact finder could determine beyond a reasonable doubt that Donahue committed a sex act on T.G. and that the act was against T.G.'s will, substantial evidence supports the conviction.

**IV. Conclusion.**

For the above reasons, we conclude that the district court did not abuse its discretion when it prohibited Donahue from questioning T.G. about the Carroll incident. Nor did the district court err when it submitted Instruction No. 20 to the jury. Finally, based upon our review of the record, we conclude there is sufficient evidence to support Donahue's conviction of sexual abuse in the third degree. As a result, we see no basis to disturb Donahue's conviction.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Christensen, C.J., who takes no part.