The STATE of Utah, Plaintiff
and Respondent,

v.

James W. BRADLEY, Defendant
and Appellant.

No. 15307.

Supreme Court of Utah.

April 17, 1978.

Robert B. Hansen, Atty. Gen., Salt Lake City, Milton J. Hess, Davis County Atty., Farmington, for defendant and appellant.

Sumner J. Hatch, Donald R. Wilson, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Before us is a defendant convicted of driving under the influence of alcohol in violation of 41–6–44, U.C.A.1953, in this case a lesser-included offense to a charge of criminal homicide. Affirmed. All statutory references are to U.C.A.1953.

On appeal, defendant contends the state failed to relate the results of a chemical breath analysis (administered to him nearly four hours after an accident), to the time of the accident. As a consequence, defendant maintains the trial court erred in admitting those results into evidence, and in instructing the jury regarding statutory presumptions. We disagree, and affirm the trial court.

Defendant testified that during the afternoon of Sept. 11, 1976, while working on his pick-up truck, he consumed four or five 12 oz. cans of 3.2 beer, the first can sometime shortly after 11:30 A.M. and the last shortly before 5:45 P.M. Thereafter, he drove several blocks to his brother-in-law's residence where he ate a piece of chicken, took one piece for the road and started home. This food was defendant's first sustenance since the previous evening.

At the intersection of State Road 106 and Center Street in North Salt Lake defendant's southbound truck collided with an eastbound vehicle. The driver of the other vehicle died from injuries sustained in the accident. Utah Highway Patrol Trooper Daryl Durrant testified he arrived at the accident scene at approximately 6:22 P.M., but did not observe the defendant until nearly an hour later. Noticing an odor of alcohol about him, Officer Durrant conducted a "field sobriety" test which required the defendant to perform several maneuvers. Unsatisfied with his performance, Durrant placed him under arrest for driving under the influence of alcohol. At 9:50 P.M., defendant submitted to a breathalyzer test at the Davis County Jail and a reading of .06% blood alcohol by weight was taken. Defendant was subsequently charged with criminal homicide in violation of 76–5–207.

During the course of the trial, defendant produced several witnesses who testified to his sobriety at the scene of the accident. The state relied on the testimony of Officer Durrant and another officer present at the scene, both of whom were of the opinion that defendant was under the influence of alcohol when observed by them. In addition, the state presented an expert witness, the Deputy State Medical Examiner, who testified as to alcohol "burn-off" rates in an attempt to relate the results of the breathalyzer test back to defendant's condition, at the time of the accident. At the trial's conclusion, the jury returned a verdict of not guilty to the charge of criminal homicide but found the defendant guilty of running a red light and driving while under the influence of alcohol.

Defendant first contends the trial court erred in admitting the results of the breathalyzer test. He bases this claim on the proposition that before such results can be admitted, they must be extrapolated back to the time of the accident by expert testimony; which, he alleges, the state failed to do.

■ Whether or not there has been sufficient relation back is irrelevant to the admissibility of the results of chemical analysis. Although the legislature has since set forth the requirement that expert testimony must establish the probative value of the results of chemical tests administered an hour or more after the alleged incident,[1] such was not the law at the time of this trial. We think that defendant's blood alcohol level at the time the test was administered was relevant to corroborate the testimony of the state's witnesses who observed the defendant and concluded that he was under the influence of alcohol.

1. 41–6–44.5.

Defendant next maintains that court erred in instructing the jury with regard to statutory presumptions based on blood alcohol levels present at the time of the incident,[2] again because the state was allegedly unable to adequately extrapolate the chemical test results to that time. Here, defendant correctly asserts that a relation back via expert testimony must precede instructions regarding presumptions. The state argues that no such requirement exists and implies it was only an attempt to aid the jury in reaching a decision.

Here, the state has produced evidence demonstrating the defendant's blood alcohol level to be .06 at the time the test was administered. Such a reading would not give rise to a presumption of intoxication even if it were shown that this level existed at the time of the accident. The state cannot hope to establish a prima facie case merely by demonstrating that defendant's blood alcohol level was some amount less than sufficient to give rise to a presumption of intoxication at some time after his operation of a vehicle. Thus, in cases arising before the enactment of 41–6–44.5, if the state is unable to produce chemical test results sufficient, to allow a presumption of intoxication when the test was administered, it must necessarily provide expert testimony to extrapolate the lower readings back to the time of the incident to show that a defendant's blood alcohol level was then sufficient to give rise to the presumption. If the state fails to do so, it is error to instruct the jury regarding the presumptions.

We now turn to defendant's contention that there was such a failure on the part of the state.

The state's expert testified that humans "burn-off" alcohol at a constant rate that varies among individuals within known limits. He stated that these variations range from a low of .009% of alcohol per hour to a high of .018% with an average of .015%. Defendant argues that the expert's ignorance of defendant's individual metabolism rate and consequent inability to pinpoint his blood alcohol level at the time of the accident precluded an extrapolation sufficient to permit on instruction regarding the statutory presumptions. We disagree.

It was enough, in this case, for the state's expert to testify concerning the range of metabolization rates among a statistical population because even if it were shown defendant's rate was at the low end of the range, an extrapolation would nonetheless indicate that his blood alcohol level, at the time of the accident, fell within the statutory presumption of being under the influence. Thus, the jury had before it ample evidence to render the verdict it did.

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

CROCKETT, J., concurs in the result.

2. 41–6–44(b) provides:
   1. If there was at that time 0.05 per cent or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of alcohol;
   2. If there was at that time in excess of 0.05 per cent but less than 0.08 per cent by weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of alcohol, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcohol;
   3. If there was at the time 0.08 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcohol; . . . .