No. 56,628

STATE OF KANSAS, *Appellant,* v. MARION M. ARMSTRONG, *Appellee.*
(689 P.2d 897)

Opinion filed October 26, 1984.

*R. Scott McQuin,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellant.

*Marion M. Armstrong,* argued the cause pro se.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by the State on a question reserved pursuant to the provisions of K.S.A. 22-3602(b)(3).

The question arises from a ruling of the trial court suppressing evidence of blood alcohol test results. The ruling appealed from was made on the morning of the trial after the defendant filed a motion for an order in limine to exclude the test results. Subsequently, the defendant was acquitted by a jury of the offense of driving while under the influence of alcohol contrary to K.S.A. 1983 Supp. 8-1567.

The facts relevant to the defendant's motion in limine are undisputed and upon being advised of the facts by counsel, the district court decided the motion without an evidentiary hearing. The relevant facts are as follows.

At 11:10 p.m. on July 15, 1983, a State Highway Patrol Trooper saw the defendant's car parked on a country road about 30 yards south of U.S. 160. Upon approaching the vehicle, the trooper saw that the car's engine was running and the defendant was unconscious behind the wheel. The defendant was awakened and, upon detecting the odor of alcoholic beverage on his breath, the trooper had the defendant perform certain field coordination tests, following which the defendant was arrested for driving while under the influence. The defendant admitted to the

trooper that he had drunk four to five beers at a bar in Medicine Lodge, and that he had started drinking at about 8:00 p.m. No open containers were seen in or around the defendant's car.

Upon his arrest, the defendant was asked if he would submit to a blood alcohol test. The defendant indicated that he would and was transported to the hospital. Once inside the hospital and after reviewing the hospital consent forms, the defendant changed his mind and withdrew his consent to the test. Later, at the sheriff's office, the defendant changed his mind once again, and asked to be allowed to give a blood sample for testing. He was taken back to the hospital where blood was withdrawn at 12:40 a.m. The test disclosed that defendant's blood contained 0.12% alcohol by weight, creating prima facie evidence of intoxication pursuant to K.S.A. 8-1005(a)(2) which provides:

"[I]f there was at the time .10% or more by weight of alcohol in the defendant's blood, it shall be prima facie evidence that the defendant was under the influence of alcohol to a degree that renders the person incapable of driving safely."

The time from arrest until the blood sample was taken was 90 minutes. The uncontradicted statement of the defendant was that he last drove his car not later than 10:30 p.m., 40 minutes prior to his arrest. Therefore, a total of two hours, ten minutes elapsed from the time the defendant drove his car until the blood was taken.

A trial to the jury was set for January 26, 1984. On the morning of January 26, the defendant filed a motion for an order in limine to exclude evidence of the results of the blood alcohol test on the ground that the blood sample tested was taken at a time too remote from the time the defendant last drove his vehicle. The pertinent parts of the motion are set forth:

"6. K.S.A. 8-1005 provides that evidence of the amount of alcohol in the defendant's blood *at the time alleged* . . . may be admitted.

"7. Blood alcohol content does not remain constant; it is purely guess work and speculation whether the defendant's blood alcohol level was the same, lesser, or greater at the time he was driving versus the time of the blood test.

"8. It would be highly prejudicial to this defendant to undergo the presumption of under the influence when the actual blood test was remote in time." (Emphasis in original.)

The trial court sustained the motion on the ground of remoteness, and then noted that "when the defendant would not submit to the test when first taken to the hospital, the arresting officer

should have reported the same to the Division of Vehicles pursuant to K.S.A. 8-1001, and should not have allowed the defendant to submit a blood sample subsequent to his initial refusal." If the blood test had not been administered, the defendant's refusal could have been used as evidence against him by the State. See K.S.A. 8-1001(c). The State did not raise as an issue whether the court was correct in the second part of its ruling when it held that a subsequent consent after an initial refusal was invalid. Since the issue was not raised, we need not address it. However, we note that we dealt with the "subsequent consent" problem in a recent case, *Standish v. Department of Revenue*, 235 Kan. 900, 683 P.2d 1276 (1984). In that case, we held an initial refusal may be changed or rescinded if done in accordance with the rules set forth in the opinion.

The single issue raised by the State is whether the trial court abused its power of discretion in suppressing evidence from a blood test given more than two hours after the defendant drove his car on the ground that it was too remote in time to have any probative value as to the defendant's condition when he was driving.

The State argues the trial court erred in suppressing the blood test results. It contends that a question of remoteness goes only to the weight of the evidence and not its admissibility. To support this contention, the State relies on *State v. Parson*, 226 Kan. 491, 601 P.2d 680 (1979). There the defendant was involved in a two-car collision while under the influence of alcohol and was charged with involuntary manslaughter. He was given a blood alcohol test approximately 45 minutes after the collision. The test showed the defendant's blood alcohol level to be 0.14% by weight. This evidence was admitted and the defendant was convicted as charged.

On appeal, the defendant claimed the trial court erred in admitting the blood alcohol test results because the blood sample was taken approximately 45 minutes after the accident, and, therefore, the test results were unreliable, inaccurate, and contained no probative value. He also argued that K.S.A. 8-1005 requires that the percentage of alcohol found must show the percentage at the time of the accident. In holding otherwise, this court stated:

"A claim of remoteness with evidence of this type goes only to the weight of the

evidence, not to its admissibility. *State v. Betts,* 214 Kan. 271, 276, 519 P.2d 655 (1974). . . .

". . . We find the results of the blood alcohol test were properly admitted into evidence. The time which elapsed between the accident and its discovery and the taking of defendant's blood goes only to the weight of the evidence received." 226 Kan. at 495.

We agree with the State that the fundamental difference between the *Parson* case and the case at hand is the amount of delay time involved. Therefore, we have reviewed cases from other states with similar statutes which have a bearing on the point.

Delays prior to the administration of a blood test appear to be quite common, often due to the length of time involved in transporting the defendant to a medical facility. In dealing with this "delay problem" courts generally find that if a defendant is placed in custody immediately and remains under the control of officers or others and consumes no more alcohol before the test is given, a conviction may be based upon the results of the delayed testing along with expert testimony estimating the blood alcohol level at the time of the accident. See, *e.g., State v. Carter,* 142 Vt. 588, 458 A.2d 1112 (1983); *People v. Kappas,* 120 Ill. App. 3d 123, 458 N.E.2d 140 (1983); *State v. Hendrickson,* 240 N.W.2d 846 (N.D. 1976); *State v. Bradley,* 578 P.2d 1267 (Utah 1978) (blood test given four hours after accident was admissible along with expert testimony on how to extrapolate the burn-off rate); *Stephens v. State,* 127 Ga. App. 416, 193 S.E.2d 870 (1972); *State v. Gallant,* 108 N.H. 72, 227 A.2d 597 (1967); *Bryant v. State,* 261 S.W.2d 728 (Tex. Crim. 1953). See also *Ullman v. Overnite Transp. Co.,* 563 F.2d 152 (5th Cir. 1977) (personal injury case; no indication of intervening drinking or unsupervised period; permissible to extrapolate back; objections go to weight).

In contrast, where there is a gap between the operation of the vehicle and the test during which the defendant is not in custody or otherwise supervised, evidence that he was drunk when arrested has been held insufficient to show he was drunk when he was driving, particularly when there was little or no evidence of intoxication at the earlier time. *United States v. DuBois,* 645 F.2d 642 (8th Cir. 1981); *State v. Dodson,* 496 S.W.2d 272 (Mo. App. 1973); *Blevins v. State,* 38 Ala. App. 584, 90 So. 2d 98 (1956). However, if the defendant had no access to alcohol or denies drinking during the gap, evidence may be admitted

showing that the defendant was drunk when arrested and the jury may then weigh the materiality of the "gap." For instance, in *State v. Ward*, 233 Kan. 144, 660 P.2d 957 (1983), a state trooper found the defendant intoxicated behind the wheel of his car which was running, but stuck in a ditch; a single beer can was in the car, and although the State had no evidence as to when the defendant drove into the ditch, the court held a claim of remoteness between the condition of the defendant at the time of arrest and the time of the accident goes to the weight of the evidence and not its admissibility. In *State v. Betts*, 214 Kan. 271, 519 P.2d 655 (1974), a defendant was arrested in his home about one and one-half hours after the accident. The court held evidence of his intoxication at the time of arrest was admissible because it was substantiated by evidence of intoxication at the time of the accident. In *Townsend v. State*, 127 Ga. App. 797, 195 S.E.2d 474 (1972), a blood test four hours after the accident, where the defendant was not in custody the entire time, was held admissible because the defendant denied drinking after the accident.

In the present case, there was no evidence that the defendant consumed any alcohol between the time he last admitted driving and when he was arrested. Just as in *Ward*, 233 Kan. 144, the defendant was found behind the wheel of his car which was still running. Accordingly, the unsupervised interim prior to arrest does not affect the admissibility of the evidence of intoxication in this case, and we again turn our attention to the length of the delay before the blood test.

We recognize that blood alcohol content does not remain constant and the defendant might have had more or less alcohol in his blood when he was driving than he did when the sample was taken. It has been found that the peak alcohol level may be reached any time from 40 to 70 minutes after consumption. R. Donigan, Chemical Tests and the Law, 44 (2d ed. 1966). From this point, alcohol is eliminated from the system at the rate of approximately .02% per hour, varying from .006% to .04% per hour. Fitzgerald and Hume, *The Single Chemical Test for Intoxication: A Challenge to Admissibility*, 66 Mass. L. Rev. 23, 31 (1981). The causes of these discrepancies include the defendant's tolerance, his weight, and the amount of food he consumed prior to drinking. While recognizing these possible variants, we note that an expert witness, capable by experience in interpret-

ing blood alcohol test results, would take all of these factors into consideration before estimating the alcohol content at the time of driving. *State v. Bradley,* 578 P.2d 1267. Although it is theoretically possible that the defendant's blood alcohol level had increased since the time he last operated his car, it has been observed in other jurisdictions that the lapse of time usually· favors a defendant who takes a blood alcohol test some time after termination of his driving because of the body's ability to "burn off" alcohol. *State v. Bence,* 29 Wash. App. 223, 627 P.2d 1343 (1981). See also *Schmerber v. California,* 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966).

In *Standish v. Department of Revenue,* 235 Kan. at 902, we stated, "The chemical testing system provided under our implied consent law is important because it provides the best available and most reliable method of determining whether a driver is 'under the influence' of alcohol." A relatively short time-lapse between the alleged violation of the law and the blood test cannot entirely negate the probative value of the blood test.

Based on the *Parson* case and the cases cited from other jurisdictions, it is our opinion that the blood test in this case was not taken at a point too remote in time. While we believe that blood tests should be administered as near in time to the arrest as practicable, a delay should not make the test results inadmissible since it is possible to estimate the alcohol content "at the time" the defendant was driving. The amount of elapsed time is something the jury should take into account in weighing the probative value of the evidence.

We conclude that the trial court abused its power of discretion in excluding the evidence of the defendant's blood alcohol content. Accordingly, the State's appeal is sustained.