(849 P.2d 143)
No. 68,390

STATE OF KANSAS, *Appellee*, v. AUBREY PENDLETON, *Appellant*.

Opinion filed March 26, 1993.

*Richard T. Merker* and *John M. Ross*, of Wallace, Saunders, Austin, Brown, and Enochs, Chartered, of Overland Park, for appellant.

*Linda S. Mock*, assistant county attorney, *Gunnar A. Sundby*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before LEWIS, P.J., LARSON, J., and E. NEWTON VICKERS, District Judge Retired, assigned.

LARSON, J.: Aubrey J. Pendleton appeals his bench trial conviction of having a blood alcohol concentration of .10 or more within two hours of operating a motor vehicle in violation of K.S.A. 8-1567(a)(2).

On October 12, 1991, Pendleton and a friend, Billy Davidson, were driving to Leavenworth, Kansas, on a sparsely traveled gravel road in Atchison County. Pendleton was driving. Davidson began joking with him and then, at some point, grabbed Pendleton's arm, which caused him to lose control of the pickup truck.

The pickup overturned in a ditch alongside the road. Davidson was trapped in the wreckage and killed. Pendleton was able to crawl out of the pickup.

At 11:30 p.m., a citizen reported the accident to the sheriff's dispatcher, who immediately notified Trooper James T. Bryan. Bryan did not know the exact time of the accident, but estimated it occurred at approximately 11:15 p.m.

When he arrived at the accident scene, Bryan went to help Davidson, but found he was dead. While returning to his patrol car, Bryan saw Pendleton walking on the road towards him, crying hysterically. Bryan tried to calm him down and learned Pendleton had been driving the pickup. During the conversation, Bryan noticed Pendleton had an overpowering odor of alcoholic beverage on his breath and concluded he had been drinking alcohol. Bryan *Mirandized* Pendleton, who agreed to continue to talk. Pendleton told Bryan he had drunk a lot of beer.

Pendleton was taken by ambulance to the Atchison Hospital. Bryan followed a short time later. Pendleton agreed to submit to a blood alcohol test, which was conducted at 1:15 a.m. on October 13, 1991.

After the blood was drawn and Pendleton was released from the hospital, Bryan took him to the sheriff's department. Pendleton was again *Mirandized* and told Bryan he had been drinking beer at a party, but felt at the time of the accident he could safely operate the vehicle.

The Kansas Bureau of Investigation received the sample on October 14, 1991, but Bryan did not receive the results until February 14, 1992. Bryan believed the delay was caused because a drug analysis was requested which was not conducted until February 5, 1992. The test results showed Pendleton had a blood alcohol concentration of 0.19.

On March 23, 1992, Pendleton was charged with violating K.S.A. 8-1567(a)(2), which states:

"(a) No person shall operate or attempt to operate any vehicle within this state while:

. . . .

"(2) the alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle, is .10 or more."

Pendleton moved to dismiss the charges, contending: (1) failure to take him before a judge without unnecessary delay, (2) failure to grant him a speedy trial, and (3) lack of evidence that he had been driving a vehicle within two hours of the time the blood test was administered.

A bench trial was held on May 15, 1992. The trial court denied the speedy trial and unnecessary delay motions and found that "although there is no exact time as to when the accident happened and when the blood test was actually performed, the Court finds that it was within approximately two hours from the time of the accident that the blood alcohol test was administered."

Pendleton was found guilty as charged and sentenced to a minimum jail term of six months, all but 30 days of which was suspended to be served on weekends. Pendleton was placed on two years' probation with conditions including payment of a $200 fine and completion of 200 hours of community service. Appeal bond of $10,000 was set. Pendleton appeals.

Pendleton raises four issues. Only one of the issues has any merit, but it is dispositive of the appeal.

Pendleton asserts that the State could not prove the blood test was administered within two hours of the time he was driving the pickup as required by K.S.A. 8-1567(a)(2).

The trial court, in its written findings, stated that the blood test was administered "approximately" two hours from the time of the accident. This finding might justify a conviction under K.S.A. 8-1567(a)(1) or (3), but the issue in this appeal is whether it is sufficient to justify a K.S.A. 8-1567(a)(2) conviction.

The State makes a broad "use the blood test with the time it was administered going to the weight" argument as if a different subsection of K.S.A. 8-1567 had been charged.

The trial court's construction of K.S.A. 8-1567(a)(2) places in issue the interpretation of the phrase "as measured within two hours of the time of operating or attempting to operate a vehicle." "Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature." *Martindale v. Tenny,* 250 Kan. 621, Syl. ¶ 1, 829 P.2d 561 (1992).

"When a statute is plain and unambiguous the court must give effect to the intention of the legislature as expressed." *Randall v. Seemann,* 228 Kan. 395, Syl. ¶ 1, 613 P.2d 1376 (1980).

"In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible. [Citations omitted.]" *State v. Adee,* 241 Kan. 825, 829, 740 P.2d 611 (1987).

"When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment." *Hughes v. Inland Container Corp.,* 247 Kan. 407, 414, 799 P.2d 1011 (1990).

"Penal statutes must be strictly construed in favor of the person sought to be subject to them. The rule of strict construction simply means ordinary words are to be given their ordinary meaning." *State v. Thompson,* 237 Kan. 562, 566, 701 P.2d 694 (1985). A statute that prohibits operating or attempting to operate a motor vehicle while under the influence of alcohol, which imposes criminal liability, is to be strictly construed. *State v. Morelli,* 25 Conn. App. 605, 609, 595 A.2d 932 (1991).

In support of its position that the trial court did not err by admitting and relying upon the test results, the State relies on our Supreme Court's decision in *State v. Armstrong,* 236 Kan. 290, 689 P.2d 897 (1984), in which the court stated:

"In a prosecution for driving under the influence of alcohol, the results of a blood alcohol test, which was administered after a delay of slightly more than two hours, are not rendered inadmissible in evidence due to the delay. The length of the delay in time between the administration of the test and when the defendant last operated the motor vehicle goes to the weight and not the admissibility of the evidence. Such evidence should be admitted along with expert testimony estimating the defendant's blood alcohol content at the time of last driving." 236 Kan. 290, Syl.

In *Armstrong,* the court concluded the trial court abused its discretion by excluding evidence of the defendant's blood alcohol content, tested 2 hours and 10 minutes after the last time the defendant had driven his car, in a prosecution for driving while under the influence of alcohol in violation of K.S.A. 1983 Supp. 8-1567. *Armstrong* is not a per se violation case.

At the time of *Armstrong*, K.S.A. 1983 Supp. 8-1567(a) provided: "No person shall operate any vehicle within this state while under the influence of alcohol." Pursuant to K.S.A. 8-1005(a)(2) (Ensley), "if there was at the time .10% or more by weight of alcohol in the defendant's blood, it shall be prima facie evidence that the defendant was under the influence of alcohol to a degree that renders the person incapable of driving safely."

Currently under K.S.A. 8-1005(b), alcohol concentration of .10 or more in the defendant's blood, urine, breath, or other bodily substance is still prima facie evidence that a defendant was under the influence of alcohol. However, 8-1567 has been substantially amended since 1983.

In 1985, the Kansas Legislature amended 8-1567 to read in relevant part:

"(a) No person shall operate or attempt to operate any vehicle within this state while:

"(1) The alcohol concentration in the person's blood or breath, at the time or within two hours after the person operated or attempted to operate the vehicle, is .10 or more;

"(2) under the influence of alcohol." K.S.A. 1985 Supp. 8-1567(a)(1), (2); see L. 1985, ch. 50, § 5.

Our court held in *State v. Zito*, 11 Kan. App. 2d 432, Syl. ¶ 1, 724 P.2d 149, *rev. denied* 240 Kan. 806 (1986): "Under K.S.A. 1985 Supp. 8-1567(a)(1), driving or attempting to drive a vehicle with an alcohol concentration of .10 or more in a driver's blood or breath is a per se violation." We further stated that: " 'Attempting to operate a vehicle with an "alcohol concentration in the person's blood or breath" of .10 or more, as measured from samples taken within two hours after the person attempted to operate the vehicle is sufficient to result in a conviction.' " 11 Kan. App. 2d at 434-35.

The same per se violation provision survived subsequent amendments to K.S.A. 8-1567 in 1988 and 1989.

K.S.A. 8-1567 was further amended in 1990. L. 1990, ch. 44, § 6; L. 1990, ch. 47, § 3. K.S.A. 1990 Supp. 8-1567 provided in relevant part:

"(a) No person shall operate or attempt to operate any vehicle within this state while:

(1) The alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in paragraph (1) of subsection (f) of K.S.A. 8-1013, and amendments thereto, is .10 or more, except that an alcohol concentration of .04 or more, shall be used for persons operating or attempting to operate commercial motor vehicles, as defined in K.S.A. 1989 Supp. 8-2,128, and amendments thereto:

(2) the alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle is .10 or more, except that an alcohol concentration of .04 or more, shall be used for persons operating or attempting to operate commercial motor vehicles, as defined in K.S.A. 1989 Supp. 8-2,128, and amendments thereto;

(3) under the influence of alcohol."

K.S.A. 8-1567 currently provides in relevant part:

"(a) No person shall operate or attempt to operate any vehicle within this state while:

(1) The alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in paragraph (1) of subsection (f) of K.S.A. 8-1013, and amendments thereto, is .10 or more;

(2) the alcohol concentration in the person's blood or breath, as measured within two hours of the time of operating or attempting to operate a vehicle, is .10 or more;

(3) under the influence of alcohol."

The 1992 amendments to K.S.A. 8-1567 are not relevant to this issue on appeal. See L. 1992, ch. 298, § 1.

Research of legislative history behind the 1990 amendments reveals that James Keller of the Kansas Department of Revenue testified before the House Committee on Transportation on February 6, 1990, in support of HB 2658, a bill which included amendments, subsequently approved, to K.S.A. 1989 Supp. 8-1567. In a memorandum to the committee dated February 7, 1990, Keller outlined the Department of Revenue's recommendations as contained in HB 2658, including:

"K.S.A. 8-1567 is amended to allow evidence other than a breath or blood test taken within two hours to support a conviction for operating or attempting to operate a vehicle with an alcohol concentration of .10 or more. Other competent evidence (including expert testimony) could be used to arrive at a determination that the person operated or attempted to operate with an alcohol concentration of .10 or more. The present provision allowing prosecution based only upon a breath or blood test taken within 2 hours is also retained. Some district courts have refused to allow evidence other than a test taken within the two-hour period in a prosecution under the present 'per se' statute. The change would simply allow other evidence to

be used to prove a person had an alcohol concentration of .10 or more at the time of operation or attempted operation."

Although not expressive of legislative intent, the Supplemental Note on HB 2658 prepared by the Legislative Research Department states:

"H.B. 2658 does the following:

. . . .

6. modifies current language in K.S.A. 8-1567 to allow a person's blood or breath test taken outside of a two-hour period of the person's driving to support a conviction for operating or attempting to operate a vehicle with an alcohol content of .10 or more at the time of driving."

K.S.A. 8-1013(f)(1) defines "other competent evidence" as that phrase is used in K.S.A. 8-1567(a)(1) as including: "Alcohol concentration tests obtained from samples taken two hours or more after the operation or attempted operation of a vehicle."

It is evident by the changes made to K.S.A. 8-1567 that our legislature intended that a conviction for driving under the influence of alcohol may be obtained by one of the alternative means provided for in K.S.A. 8-1567(a)(1), (2) or (3). However, because each subsection provides a different basis for a conviction, each has requirements that must be met.

The legislative directive is clear. To obtain a conviction for a per se violation under K.S.A. 8-1567(a)(2), the State must show the alcohol concentration was tested *within* two hours of the last time a defendant operated or attempted to operate a vehicle. Further, our legislature has expressly provided in K.S.A., 8-1567(a)(1) that an alcohol concentration test administered two hours or more after a defendant operated or attempted to operate a vehicle may be competent evidence to support a conviction under that subsection. *Armstrong* appears to still be valid authority for the proposition that a post two-hour test is competent evidence in a K.S.A. 8-1567(a)(3) prosecution, but the provisions of K.S.A. 8-1567(a)(2) specifically require the test in a per se prosecution to be taken within two hours of operating or attempting to operate a vehicle.

Although not addressing the precise issue presented by Pendleton herein, another panel of this court in *Podrebarac v. Kansas Dept. of Revenue,* 15 Kan. App. 2d 383, 807 P.2d 1327 (1991), recognized that K.S.A. 1990 Supp. 8-1567(a)(2) contained a two-

hour limitation on the admissibility of alcohol concentration test results. The question before our court in *Podrebarac* was whether the trial court erred in applying the two-hour limitation on test results taken under K.S.A. 1990 Supp. 8-1567(a)(2) to administrative suspension actions under the implied consent law, K.S.A. 8-1001 *et seq.*

In reversing the trial court after determining the two-hour limitation did not apply to the admissibility of test results for administrative suspension purposes, Judge Brazil reasoned that the legislature intended "to allow administrative suspensions for driving while intoxicated on less strict standards of proof than a criminal conviction for driving with a blood alcohol concentration of .10 would require." 15 Kan. App. 2d at 386.

Another panel of this court in *State v. Zito*, 11 Kan. App. 2d at 434-35, although not so holding, recognized that under K.S.A. 1985 Supp. 8-1567(a)(1), the blood or breath samples must be taken within two hours of the defendant's last operation or attempted operation of the vehicle.

Research of other jurisdictions with similar DUI statutes that have addressed this issue supports the conclusion that to obtain a conviction under K.S.A. 8-1567(a)(2) the State must show the test was conducted within the two-hour limitation period; otherwise, the test results are not competent evidence and are inadmissible to prove a per se violation. *State v. Kimball*, 361 N.W.2d 601 (N.D. 1985), held that if a chemical test is not performed within two hours of driving, a driver cannot be convicted of violating N.D. Cent. Code § 39-08-01(1)(a) (1987) (a provision similar to K.S.A. 8-1567(a)(2)). See *City of Grand Forks v. Soli*, 479 N.W.2d 872, 874 (N.D. 1992).

In *Newark v. Lucas*, 40 Ohio St. 3d 100, 103-04, 532 N.E.2d 130 (1988), the Supreme Court of Ohio opined:

"[I]t is clear from . . . the *per se* offenses set forth in R.C. 4511.19(A) and Newark Ordinance 434.01(a) that the respective legislative bodies have determined that if the amount of alcohol concentration in the driver's bodily substance exceeds the proscribed amount as shown by a properly administered test given within two hours of the alleged violation, then a *per se* offense has been committed. Admission of the chemical analysis of bodily substances withdrawn beyond the two-hour limit into evidence in prosecutions for violations of these sections would defeat that legislative intent and produce confusing, unreliable and inconsistent verdicts."

See also *State v. Dowd,* 63 Ohio App. 3d 610, 612, 579 N.E.2d 734 (1989), in which the court held that "[W]hether the prosecution complied with the two-hour time limitation is a foundational question to be determined by the trial court."

In this case, the timing was unclear, but the State admitted on oral argument that the accident may have occurred closer to 11:00 p.m., although the trooper's testimony placed it later. The holding critical to this appeal, however, remains the trial court's factual finding that the test was administered approximately two hours after the accident. Pursuant to the plain wording of K.S.A. 8-1567(a)(2), we hold that the test must be administered *within* two hours of driving or attempting to drive in order to be competent evidence to sustain a per se violation.

The test would have been sufficient evidence to justify a conviction under other portions of the statute, but the charge, the trial, and the evidence were all directed toward a per se violation. Based upon the finding made by the trial court, there is insufficient evidence to sustain a per se violation.

Because of this ruling, the remainder of the issues raised by Pendleton need not be considered.

Pendleton's conviction is reversed, and his sentence is vacated.