(962 P.2d 1146)

No. 79,361

STATE OF KANSAS, *Appellee*, v. ERIC R. SLIVA, *Appellant*.

Opinion filed August 28, 1998.

*Steve Kraushaar*, of Marysville, for the appellant.

*Kim W. Cudney*, county attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before ROYSE, P.J., LEWIS and KNUDSON, JJ.

LEWIS, J.: Defendant was convicted of driving under the influence of alcohol. As a part of its evidence, the State introduced results of an intoxilyzer test which was taken 4 and ½ hours after defendant had driven his vehicle. The result of the intoxilyzer test showed defendant's breath alcohol level was .114. The result of the test was admitted into evidence, and defendant appeals.

Defendant's principal argument is that it was error for the trial court to admit evidence of the intoxilyzer test results without requiring the State to also present expert testimony as to how the 4 ½-hour delay affected defendant's alcohol concentration. We conclude defendant's argument is without merit, and we affirm his conviction.

In *State v. Armstrong*, 236 Kan. 290, Syl., 689 P.2d 897 (1984), our Supreme Court held:

"In a prosecution for driving under the influence of alcohol, the results of a blood alcohol test, which was administered after a delay of slightly more than two hours, are not rendered inadmissible in evidence due to the delay. The length of the delay in time between the administration of the test and when the defendant last operated the motor vehicle goes to the weight and not the admissibility of the evidence. Such evidence should be admitted along with expert testimony estimating the defendant's blood alcohol content at the time of last driving."

Defendant argues that *Armstrong* requires expert testimony, as described above, as a prerequisite to the admission of any blood or breath alcohol test taken more than 2 hours after a defendant last operated the vehicle. We do not agree. As we read it, *Armstrong* only recommends expert testimony but does not require it. In any event, *Armstrong* specifically and clearly states that the evidence is admissible even though the delay in giving the alcohol test was in excess of 2 hours.

The legislature has explicitly made the result of the intoxilyzer test in this case admissible without any requirement of expert testimony. K.S.A. 1997 Supp. 8-1567 reads as follows:

"(a) No person shall operate or attempt to operate any vehicle within this state while:

"(1) The alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in paragraph (1) of subsection (f) of K.S.A. 8-1013, and amendments thereto, is .08 or more."

The term "other competent evidence" is defined in K.S.A. 1997 Supp. 8-1013(f) as follows: " 'Other competent evidence' includes: (1) *Alcohol concentration tests obtained from samples taken two hours or more after the operation or attempted operation of a vehicle*; and (2) readings obtained from a partial alcohol concentration test on a breath testing machine." (Emphasis added.)

In *State v. Pendleton*, 18 Kan. App. 2d 179, 185, 849 P.2d 143 (1993), we said, "[O]ur legislature has expressly provided in K.S.A. 8-1567(a)(1) that an alcohol concentration test administered two hours or more after a defendant operated or attempted to operate a vehicle may be competent evidence to support a conviction under that subsection."

We agree with *Pendleton*. The results of the intoxilyzer test were admissible competent evidence of defendant's guilt by express legislative fiat. We further conclude that there is no requirement that the State provide an expert witness in order to make the test results admissible. We note that while test results taken more than 2 hours after a defendant last drove or attempted to drive his or her vehicle are admissible, such test results are only competent evidence as to his or her guilt—they are not conclusive. We also note that defendant was free to call his own expert witness if he saw fit.

The trial court, in finding defendant guilty, said:

"Counsel, in reviewing this matter, the Court notes that the State's case shows, among other things, that the defendant drank three beers at the Longhorn, that his last beer was apparently in the range of 12:00 to 12:30 a.m., that defendant indicated that he drove the vehicle from the Long Branch. The officer observed the vehicle, apparently with the lights out, in the center of the road approximately four miles north of Washington on a paved road. The defendant was asleep behind the wheel, or laying to the side. The officer aroused the defendant, talked with him, smelled alcohol on his breath, was advised that he had had three beers at the Longhorn. The officer looked in the vehicle and under and around the vehicle and found no other driver or person, nor any open—open containers or closed containers of alcoholic beverages. Based upon the exclusion of other drivers and the exclusion of the consumption of alcohol after the driving or attempting to drive, the Court feels that the test results are properly admissible in the absence of an expert witness. The trial court, of course, has discretion in this matter. The Court feels that the evidence would not be irrelevant and misleading and that the jury should at least be able to consider it for whatever value it might place on it. The Court would also note, as I recall in the voir dire, there was discussion by Mr. Kraushaar of the burn-off factor, and I think that frankly would be common knowledge, that the alcohol would metabolize over time, and that's a factor, of course, the jury can take into consideration in determining what weight, if any, to be given these results. So for those reasons, the Court finds that the test results are properly admissible. . . ."

We agree with the trial court, and we hold as follows: (1) An intoxilyzer test result obtained 4 and ½ hours after a defendant has last operated or attempted to operate his or her vehicle is admissible as "other competent evidence" in a DUI prosecution; (2) the State is not required, as a prerequisite to the admissibility of the intoxilyzer test results, to call an expert witness to explain those results and to interpret how the 4 and ½ hour delay affected de-

fendant's alcohol concentration at the time he or she last drove or attempted to drive the vehicle.

Defendant next argues that the evidence was not sufficient to support his conviction. We do not agree.

Our standard of review on an issue of sufficiency of the evidence is as follows: "When the sufficiency of the evidence is challenged, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Cellier*, 263 Kan. 54, Syl. ¶ 7, 948 P.2d 616 (1997).

Defendant was convicted under K.S.A. 1997 Supp. 8-1567(a)(1), which provides that a conviction may be supported by "any competent evidence" if the defendant's blood or breath alcohol level was .08 or more. We have examined the record in this case and conclude that there is sufficient competent evidence to support the defendant's conviction. The intoxilyzer test results were properly admitted and showed defendant's breath alcohol level to have been .114. That is not the only evidence offered to show that defendant was intoxicated. Defendant was found in his vehicle in the middle of the road 4 to 5 miles north of Washington, parked in a valley blocking both lanes, and with no lights on. Defendant told the deputy sheriff that his battery was dead and that he thought he had pulled far enough off the road to be out of the way of traffic. The deputy noted the strong odor of alcohol from defendant, who admitted that he had three beers earlier. In addition, defendant failed the field sobriety test which Deputy Campbell asked him to perform.

We hold that the evidence was sufficient to convince the finder of fact, beyond a reasonable doubt, that defendant was guilty of driving with a breath alcohol level of .08 or more.

Affirmed.

ROYSE, J., concurring: I agree with the majority's conclusion that evidence of breath alcohol concentration derived from tests taken more than two hours after the defendant's operation of an automobile is admissible. This conclusion is supported by K.S.A. 1997

Supp. 8-1013(f), K.S.A. 1997 Supp. 8-1006(a), and *State v. Armstrong*, 236 Kan. 290, 689 P.2d 897 (1984).

I respectfully disagree with the majority's analysis of the sufficiency of the evidence issue. The majority concludes that the record contains other evidence, aside from the intoxilyzer test, which shows that Sliva was intoxicated. But Sliva was not convicted of driving while under the influence of alcohol pursuant to K.S.A. 1997 Supp. 8-1567(a)(3). He was convicted under 8-1567(a)(1), which requires proof of a breath alcohol concentration of .08 or more. The majority opinion fails to explain how this other evidence shows that Sliva was driving with a breath alcohol concentration of .08 or more.

I further disagree with the majority's interpretation that *Armstrong* only recommends expert testimony but does not require it. We must be cautious about construing *Armstrong* in connection with a sufficiency question, because *Armstrong* addressed a question of admissibility, not sufficiency. Nevertheless, if *Armstrong* is to be read as sending any signal, its repeated references to expert testimony which extrapolates from the results of delayed blood tests indicate the court is well aware of the pitfalls of allowing a jury to speculate about a defendant's breath alcohol level at one time based upon tests taken much later. See *Com. v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992) (finding absence of expert testimony left jury to speculate about driver's blood alcohol level at critical time while he was driving).

Based on the sequence of events in this case, however, I concur with the majority opinion that there was sufficient evidence to support Sliva's conviction. As stated in *Armstrong*:

"We recognize that blood alcohol content does not remain constant and the defendant might have had more or less alcohol in his blood when he was driving than he did when the sample was taken. It has been found that the peak alcohol level may be reached any time from 40 to 70 minutes after consumption. [Citation omitted.] From this point, alcohol is eliminated from the system at the rate of approximately .02% per hour, varying from .006% to .04% per hour. [Citation omitted.] . . . [I]t has been observed in other jurisdictions that the lapse of time usually favors a defendant who takes a blood alcohol test some time after termination of his driving because of the body's ability to 'burn off' alcohol." [Citations omitted.] 236 Kan. at 294-95.

Given a breath alcohol concentration of .114 taken at least 4 and ½ hours after Sliva last drove his car, there is sufficient evidence in the record that he drove while he had a breath alcohol concentration of .08 or more.