NOT DESIGNATED FOR PUBLICATION

No. 114,334

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MATTHEW RYAN ZACHARIAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Atchison District Court; MARTIN J. ASHER, judge. Opinion filed May 13, 2016.
Affirmed.

*John R. Kurth*, of Kurth Law Office Incorporated, P.A., of Atchison, for appellant.

*Gerald R. Kuckelman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and BURGESS, S.J.

*Per Curiam*:  Matthew Ryan Zacharias appeals his conviction of driving under the influence (DUI) in violation of K.S.A. 2015 Supp. 8-1567(a)(3). On appeal, Zacharias argues that the trial court erred when it considered his blood alcohol content (BAC) test results. Zacharias also argues that there was insufficient evidence to support his convictions. Nevertheless, as detailed below, both of Zacharias' arguments fail. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2015, at approximately 1:30 a.m., Deputy Kelly Johansen received a call that a person had driven his truck off the side of the road. Deputy Johansen arrived on scene shortly thereafter, finding a pickup truck with its driver's side wheels in a ditch. Two men were attempting to get the truck out of the ditch. When Deputy Johansen asked the men what happened, a man, later identified as Zacharias, told Deputy Johansen that he had driven the truck off the side of the road while he was texting and driving. The road Zacharias had driven off was a gravel road. Due to recent snow, the road was wet and muddy in certain parts.

Deputy Johansen became suspicious that Zacharias had been driving under the influence after noticing the following: (1) Zacharias had an odor of alcohol emanating from his breath; (2) Zacharias had slurred speech; (3) Zacharias had poor balance, falling on the ground when he jumped off the bed of his truck; and (4) Zacharias had bloodshot and watery eyes. When Deputy Johansen asked Zacharias how many beers he had consumed, Zacharias responded a couple. Zacharias also told Deputy Johansen that he had just left a local bar.

Zacharias agreed to complete standardized field sobriety tests (SFSTs). Deputy Johansen reported that Zacharias did poorly on both the one-leg-stand test and the walk-and-turn test, losing his balance and swaying during both tests. After failing these tests, Deputy Johansen asked Zacharias if he would consent to a preliminary breath test (PBT). Zacharias agreed, and his PBT results indicated that he was under the influence.

Accordingly, Deputy Johansen arrested Zacharias for DUI. Deputy Johansen took Zacharias to the hospital, asked Zacharias if he would agree to a blood draw, and read Zacharias the implied consent notices. Zacharias agreed to the blood draw. Zacharias' blood was drawn at approximately 3 a.m. At some point after his arrest, Zacharias

admitted to Deputy Johansen that he had consumed about 12 beers in the previous 12 hours. Ultimately, Zacharias' blood test results showed that his BAC was 0.17.

The State charged Zacharias with DUI in violation of K.S.A. 2015 Supp. 8-1567, a class A nonperson misdemeanor. The complaint specifically alleged that Zacharias

"unlawfully operate[d] or attempt[ed] to operate a vehicle within this state while the alcohol concentration in [his] blood or breath [was] over .08 or more; or the alcohol concentration in [his] blood or breath as measured within two hours of the time of operating or attempting to operate a vehicle [was] .08 or more; or, while under the influence to a degree that render[ed [him] incapable of safely driving a vehicle."

At Zacharias' bench trial, Deputy Johansen testified about his encounter with Zacharias. Deputy Johansen explained that he believed Zacharias was under the influence based on his breath smelling like alcohol, his slurred speech, his poor balance, his bloodshot and watery eyes, and his failed SFSTs. Deputy Johansen testified that Zacharias told him the last drink he had was at the bar. Deputy Johansen admitted that he was unsure exactly when Zacharias drove his truck into the ditch, but he knew that he arrived on scene about 1:30 a.m. and that Zacharias' blood was drawn at about 3 a.m. The State also admitted Zacharias' blood test results into evidence.

Zacharias' father, Claude Zacharias, testified on behalf of the defense. Claude explained that Deputy Johansen called him to the scene of Zacharias' accident so he could tow the truck out of the ditch. Claude explained that he knew Deputy Johansen personally because he is also a police officer for the city of Atchison. Accordingly, Claude was able to observe his son at the scene of the accident before Deputy Johansen took him to the hospital for the blood draw. When asked by the State if he could tell whether his son had been drinking, Claude responded, "Oh, I think he had been drinking, yes."

The defense also admitted Deputy Johansen's bodycam video of the SFSTs, arrest, and blood draw into evidence. After its admission, it seems the trial court watched the video in its entirety. The defense challenged the validity of the blood test given that Deputy Johansen was unable to establish if Zacharias' blood was drawn within 2 hours of driving.

After viewing the video, the trial court found Zacharias' guilty of DUI. In reaching this ruling, the trial judge stated:

"There is not sufficient evidence to establish the time line as far as whether the blood was drawn within two hours of driving.

"So I don't believe that evidence can be used for those subsections of d.u.i.

. . . .

"So the evidence of the blood draw, which the Court has admitted, would be admissible and relevant with regards to the general catchall in the d.u.i. statute as to whether the defendant was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle."

"Really, for no other purpose.

"With regards to that the, the evidence established that the officer testified that he smelled the odor of alcohol.

"He testified that there was slurred speech and bloodshot eyes.

"There was testimony with regards to that he had gone back to the truck to remove a pack of cigarettes.

"The truck is at kind of an angle into the ditch, which has been testified and also can be viewed on the video, when the defendant apparently jumped off of the truck from getting the cigarettes.

"He apparently fell.

"Frankly, I think that's of limited evidentiary value, given that he's jumping from an off-centered off-angled vehicle onto a muddy road.

"So I think it's a very limited evidentiary value as far as showing impairment.

"You know, the accident itself, again, is somewhat of a limited value as far as evidence of impairment since the cause of the accident was his distracted driving while texting with the combination of muddy conditions of the road.

. . . .

"With regards then to the two field sobriety tests that the defendant conducted, he performed the one-leg stand.

"From the Court's observation, he essentially performed that rather well.

"I think there was a slip towards the end . . . . until the end, he had performed it reasonably well.

"With regards to the walk-and-turn, the deputy testified that he had counted a flaw in the initial step that is visible on the video that you can see.

"Really the first step is off the imaginary line.

"The deputy testified that there was also a swaying and using of arms in coming back.

"Frankly, the Court did not see that.

"I mean, if that occurred, it had to be very subtle.

. . . .

"The test results from the blood test have been admitted.

"They show that at the time he was tested, he was at [0.17], which, of course, is twice the limit, of the .08.

"I think, given the combination of the evidence . . . it's not what the Court would consider overwhelming, but I do think it's sufficient—so the Court is going to find you guilty of the charge.

"Again, given the evidentiary value of the test, even though it's not the presumed impairment within the two hours, it still is admissible and relevant with regards to whether the defendant could safely operate the vehicle, given the combination of other factors.

"Even the field sobriety—obviously, we've seen worse—there were some flaws.

"So the Court finds there is sufficient evidence and finds him guilty."

The trial court sentenced Zacharias to 1 year in county jail but suspended all but 5 days of his sentence. The trial court also fined Zacharias in the amount of $1,250. Zacharias timely appealed.

ANAYLSIS

*Did the trial court err in considering the blood test*?

An appellate court has unlimited review over the interpretation of a statute. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014).

Both parties agree that the trial court found Zacharias guilty of DUI to a degree that made him incapable of safely driving in violation of K.S.A. 2015 Supp. 8-1567(a)(3). Nevertheless, Zacharias takes issue with the fact that the trial court considered his blood test results. Zacharias argues that because Deputy Johansen was unable to establish when he drove his truck into a ditch, and therefore stopped driving, his blood test results were inadmissible for purposes of determining whether he was DUI. Citing *State v. Armstrong*, 236 Kan. 290, 689 P.2d 897 (1984), Zacharias contends that if the lapse of time between the moment a defendant stopped driving and the moment a defendant's blood was drawn is of an unknown proportion, then the defendant's blood test should not be considered for any purpose because the probative value of the test is entirely negated. The *Armstrong* court made no such holding.

Under K.S.A. 2015 Supp. 8-1567(a)(3), a person may be convicted of DUI when that person is "under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." Under K.S.A. 2015 Supp. 8-1567(a)(2), a person may be convicted of DUI when "the alcohol concentration in the person's blood or breath, as *measured within three hours of the time of operating or attempting to operate a vehicle*, is .08 or more." (Emphasis added.) Thus, K.S.A. 2015 Supp. 8-1567(a)(2)

6

requires that a test be taken within a specific time of a person operating a vehicle, while K.S.A. 2015 Supp. 8-1567(a)(3) does not. See also *State v. Pendleton*, 18 Kan. App. 2d 179, 185, 849 P.2d 143 (1993) (explaining the statutory differences regarding the admissibility of blood and breath tests under K.S.A. 8-1567[a][1], [2], and [3]).

In the complaint, the State charged Zacharias under an alternative that stated that he "unlawfully operate[d] or attempt[ed] to operate a vehicle within this state while . . . the alcohol concentration in [his] blood or breath as measured within *two hours* of the time of operating or attempting to operate a vehicle [was] .08 or more." (Emphasis added.) The older version of K.S.A. 8-1567(a)(2) had a 2-hour window which was amended to 3 hours in 2011. This discrepancy has no effect on the outcome of this issue.

In *Armstrong*, our Supreme Court held that even though Armstrong's blood was drawn over the statutory time limit, his blood test results were admissible. 236 Kan. at 295. The *Armstrong* court held:

> "While we believe that blood tests should be administered as near in time to the arrest as practicable, a delay should not make the test results inadmissible since it is possible to estimate the alcohol content 'at the time' the defendant was driving. The amount of elapsed time is something the jury should take into account in weighing the probative value of the evidence." 236 Kan. at 295.

Thus, the *Armstrong* court never banned the trial court from considering blood test results because the time between the moment the defendant stopped driving and the moment the defendant's blood was drawn was unknown. Instead, the *Armstrong* court simply directed the trial court to consider the length of the delay, whatever that may be, in determining the weight of the evidence. As a result, Zacharias' assertion that the trial court erred by considering his blood test results because the State was unable to establish exactly when he stopped driving is incorrect.

7

Moreover, although we do not know the exact moment Zacharias stopped driving, the State presented a timeline of Zacharias' alcohol consumption. In turn, this timeline provided the trial court with highly relevant evidence regarding whether Zacharias was capable of safely driving.

As previously detailed, the State presented evidence: (1) that Zacharias ultimately admitted that he had consumed 12 beers over the 12 hours before the accident; (2) that Zacharias consumed beer at the bar immediately before driving his truck into a ditch; and (3) that Zacharias consumed his last drink at the bar. All of this evidence strongly supports that Zacharias had been drinking heavily immediately before driving. Consequently, even though the trial court did not know the exact moment Zacharias stopped driving, the trial court had a timeline of Zacharias' alcohol consumption. From this timeline, the trial court had substantial competent evidence to reasonably conclude that when Zacharias drove his truck into the ditch, he was under the influence to a degree that made him so impaired he could not safely drive. Clearly, the fact that Zacharias stopped drinking at the bar and his BAC was more than twice the legal limit when he was eventually tested at 3 a.m. indicates that he was very impaired when he drove earlier that evening.

The *Armstrong* court further noted:

"Although it is theoretically possible that the defendant's blood alcohol level had increased since the time he last operated his car, it has been observed in other jurisdictions that the lapse of time usually favors a defendant who takes a blood alcohol test some time after termination of his driving because of the body's ability to 'burn off' alcohol." 236 Kan. at 295.

Given Zacharias' admission that his last drink was at the bar before driving, this court can safely assume that any time delay between the moment Zacharias stopped driving and the

8

moment Zacharias had his blood drawn favored Zacharias because his body had the opportunity to burn off more alcohol.

In summary, even though the State could not establish the exact moment Zacharias stopped driving, the trial court could consider this evidence in determining whether Zacharias drove his truck while under the influence of alcohol to a degree that rendered him incapable of safely driving. Any delay in giving the blood test impacted the weight of the evidence not its admissibility. Additionally, given the facts of this case, it is readily apparent that the blood test result was highly relevant in showing that Zacharias was too impaired to operate his truck safely.

*Was there sufficient evidence to support Zacharias' conviction*?

An appellate court reviews a defendant's challenge on the sufficiency of the evidence in the light most favorable to the prosecution. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). In conducting this review, this court will not reweigh the evidence or reassess the credibility of witnesses. 299 Kan. at 525. Reversal of the factfinder's decision will occur in only the rarest cases where the evidence is so incredible that no reasonable factfinder could find the defendant guilty beyond a reasonable doubt. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

In his brief, Zacharias argues that without the blood test results, there was insufficient evidence to convict him of DUI. Nevertheless, as previously detailed, Zacharias' argument that the trial court could not consider his blood test results because the State failed to establish when he stopped driving was incorrect. Accordingly, his argument that there was insufficient evidence without the blood test to convict him necessarily fails. Because Zacharias has included no other argument regarding the sufficiency of the evidence in his brief, he has abandoned any argument he may have had.

See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013) (holding that an issue not briefed is abandoned).

It is important to point out that even without the blood test there was sufficient evidence to support Zacharias' conviction. The State presented the following evidence supporting that Zacharias was DUI to a degree he could not safely drive: (1) he smelled like alcohol; (2) he had poor balance, falling when jumping off of his truck bed; (3) he had slurred speech; (4) he failed the one-leg-stand test; (5) he failed the walk-and-turn test; (6) he drove his truck into a ditch; (7) he admitted he had been drinking, eventually admitting he had consumed 12 beers over 12 hours; (8) he had just left a bar; and (9) he had been out in the early morning hours.

When the trial court ultimately found Zacharias guilty of DUI to a degree that he was incapable of driving safely, it discounted some of the State's evidence. The trial court found that the fact Zacharias fell when he jumped out of his truck bed and the fact that he drove his car into a ditch was of "limited evidentiary value" because of the wet and muddy conditions of the road. The trial court also found that Zacharias performed the SFSTs "reasonably well." Yet, the trial judge did not totally discount this evidence because although he had "seen worse," he recognized that Deputy Johansen accurately reported that there "were some flaws." Based on this statement, it is clear that the trial court ultimately considered the SFSTs.

Citing *City of Wichita v. Molitor*, 301 Kan. 251, 341 P.3d 1275 (2015), Zacharias asks this court to disregard Deputy Johansen's subjective observations. In *Molitor*, our Supreme Court held that an "officer's sensory perceptions, such as the strength of the alcohol odor or the condition of the driver's eyes, are subject to an imprecise personal opinion." 301 Kan. at 267. *Molitor*, however, is distinguishable in two ways. First, *Molitor* is distinguishable because it involved whether an officer had reasonable suspicion to request that Molitor submit to a breath test, not whether there was sufficient

10

evidence to support his DUI conviction. Second, *Molitor* is distinguishable because unlike Zacharias, Molitor passed his SFSTs and told police he had consumed maybe two or three beers.

Accordingly, omitting the blood test results and the evidence the trial court discounted, the evidence supported that Zacharias was DUI to a degree that rendered him incapable of driving. Zacharias' failure of both SFSTs is a particularly damning fact. As the *Molitor* court noted, SFSTs are objective-scientific tests developed to identify whether a person is illegally impaired. See 301 Kan. at 267. Thus, failure of these tests should weigh heavily against Zacharias. Moreover, regardless of the timeframe of consumption, it is readily apparent that the trial court's finding that Zacharias was too intoxicated to safely drive was reasonable given Zacharias' admission to drinking 12 beers before driving.

Accordingly, for the preceding reasons, a rational factfinder could have concluded that Zacharias drove his truck while under the influence to a degree that rendered him incapable of safely driving.

Affirmed.